OLIVER ELMORE V. IRA MARKS AND OTHERS.

[IN CHANCERY.]

*Deed. Delivery. Estoppel.*

A deed does not take effect until delivery. To constitute a delivery the grantor must part with the custody and control of the instrument, permanently, with the intention of having it take effect as a transfer of the title, and must part with his right to the instrument as well as the possession.

The orator executed a deed of the premises in question to M. without his knowledge, took it to the clerk's office to be filed, but directed that it should not be recorded, but be returned to him when he called for it. The deed was recorded by mistake. The orator subsequently took the deed away and it was accidentally destroyed by fire. M. never had it in his possession, and had no knowledge of it until some six or eight months after it was executed, when the orator told him it was recorded by mistake. The orator was considerably indebted to M. and others, and he executed this deed to prevent his other creditors from attaching this land. *Held,* that this was not such a delivery of the deed as was necessary to give it effect as a conveyance, transferring the title to M.

Nor is the orator estopped from asserting his title to the land against the attaching creditors of M., who knew nothing about the transaction until the land was set off to them on execution.

BILL IN CHANCERY. The bill states that on the 16th day of August, 1853, the orator was well seized in fee of the following described land, situated in Winhall, to wit: the whole of lot No. 10, in the 9th range, and the west half of lot No. 6, in the 10th range, containing in all two hundred and fifty-five acres, and being then worth the sum of twelve hundred dollars; that previous to and on said 16th day of August, the orator was indebted to Ira Marks, of Pawlet, in several sums of money, and was under other liabilities to said Ira for property which said Ira had before that time placed in the orator's hands to be sold for said Ira, and the orator being desirous to secure said Ira for such indebtedness and liabilities, on said 16th day of August, executed to said Ira a good and sufficient quit claim deed of said lands, and took the deed to the town clerk's office in Winhall, with the intention of putting it into the hands of Chester B. Williams, then town clerk of Winhall, to be by him put on

file and kept until the orator should repay said sum of money, with interest, to said Ira, and discharge said liabilities, and then to redeliver it to the orator; but not finding Williams there the orator left the deed with one C. C. Wheeler, then assistant town clerk of Winhall, with directions to file, but not to record the same; which directions Wheeler did not communicate to Williams upon his return, and Williams finding said deed in his office supposed the same was left for record, and recorded the same, of which neither said Ira nor the orator was informed for some time afterward; that the orator from time to time made payment and delivered property to said Ira toward said sum of money and the interest thereon accrued, and said liabilities, until the whole thereof were fully paid and satisfied; that when the orator became informed that said deed was recorded in the land records, the orator applied to said Ira, and requested him to reconvey said lands to the orator, with which request said Ira expressed himself willing to comply, and informed the orator that the authorities of Winhall had assessed taxes upon said lands and set the same in the list to said Ira and that said taxes remained unpaid, and said Ira proposed to the orator to allow the collector to sell said land for said taxes; that the orator should bid off said lands at the collector's sale, that neither said Ira nor the orator should redeem the same, and that the orator should take a deed thereof from the collector, and thus acquire a valid title thereto, to which proposal the orator assented, and in pursuance of said arrangement, bid off said land and took a collector's deed; that upon examination the orator finds that the collector did not proceed according to law in selling and conveying said land to the orator, but that his proceedings are irregular and invalid in many respects so that the orator has acquired no title to said lands by reason thereof; that said Ira has never made any conveyance of said lands to the orator; that sometime previous to or on the 25th day of February, 1861, Daniel H. Bromley and James Leach of Pawlet, and Gideon C. Leach of Rupert, prayed out a writ of attachment in their favor against said Ira, and caused the same to be served by attaching said lands as the property of said Ira, and recovered judgment against said Ira for the sum of $550.50 damages and $19.59 costs of suit, and on the 13th

day of October, 1861, took out a writ of execution upon said judg-
ment and delivered the same to one Billings Taylor, then a deputy
sheriff of the county of Bennington, who on the 20th day of
December, 1861, levied said execution upon said lands and set out
the same to Daniel H., James and Gideon C.; that said Ira did not
redeem the same, and said Daniel H., James and Gideon C. now
claim said lands and the possession thereof by virtue of said levy;
that Daniel II., James and Gideon C. well knew of the orator's
interest in said land as hereinbefore described before and at the time
of said levy.

And praying that the defendants may answer the premises and
that an account may be taken of said payments by the orator to said
Ira, and of the sum due said Ira upon his loan of three hundrd dol-
lars, principal and interest, and the balance due either to said Ira or
the orator ascertained. And that if anything shall be found due
said Ira from the orator, that said Ira, Daniel H., James and Gideon
C. may be decreed to convey said lands to the orator upon payment
thereof; and that if anything shall be found due the orator from said
Ira in respect of payments upon said loan, that he may be decreed to
pay the same to the orator; and that the defendants may be
restrained by injunction from this court from setting up any claim to
said lands under and by virtue of said deed.

The answer of Bromley, James and Gideon C. Leach admitted
the attachment and recovery of judgment against Marks, and the
levy on said land, and that it had been set out to them, but denied
the other allegations in the bill.

The answer of Marks denied the averments in the bill in respect
to the object for which the deed was executed; the alleged arrange-
ment as to the record; the alleged agreement with Marks as to the
record; the alleged promise of Marks to reconvey; the alleged
agreement in respect to the sale for taxes; the answer averred that
said land was first mortgaged to the defendant Marks by the orator,
to secure a payment of $300. made by Marks to Howard, the grantor
to the orator, and that the quit claim was executed and the land con-
veyed to the defendant Marks in payment of said $300., and for
goods and money which the defendant claimed to have advanced to

the orator; denied that the orator had ever paid said $300. and interest thereon, or any part thereof.

The answers were traversed and testimony was taken tending to support the bill and answers, and upon the hearing at the December Term, 1865, KELLOGG, Chancellor, the bill was dismissed, from which the orator appealed.

*Butler & Wheeler*, for the orator.

*J. B. Bromley* and *A. L. Miner*, for the defendants.

The opinion of the court was delivered by

PIERPOINT, Ch. J.    The first question presented for our consideration is, whether the deed executed by the orator to the defendant Marks in 1853, of the land in controversy, was *delivered* so as to become operative as a conveyance of the title.

That a deed does not take effect until it is delivered, either to the grantee or some other person for him, or for his use and benefit, and to be delivered to him, either absolutely or upon the performance of some condition or the happening of some contingency, is an elementary principle, and not questioned.

What amounts to a delivery is a question that has been much discussed, each case standing mainly upon its own peculiar facts; but all the authorities seem to agree that to constitute a delivery the grantor must part with the custody and control of the instrument, permanently, with the intention of having it take effect as a transfer of the title, and must part with his right to the instrument, as well as with the possession. So long as he retains the control of the deed, he retains the title.

In this case the orator executed the deed of the premises in question to the defendant Marks, without Marks' knowledge, and without any understanding with him in respect to it, and then took it to the town clerk's office, and left it with directions to have the town clerk file it, but not to put it upon the record, and retain it until he should have paid Marks what he owed him, and then return it to him (the orator.)    As the town clerk was not at home when the deed was left,

and the direction not to record the deed not having been delivered to him, he recorded it. The orator subsequently took the deed from the town clerk's office, and it was among his papers when they were destroyed by fire. Marks never had the deed in his possession and never saw it; he had no knowledge of it until some six or eight months after it was executed. The orator then informed him of it, and at the same time told him it was recorded by mistake. Whether at that time the orator had taken the deed from the town clerk, does not appear.

This we think was not such a delivery of the deed as was necessary to give it effect as a conveyance, transferring the title to Marks.

The leaving of the deed with the town clerk cannot be construed as a delivery to Marks, or a delivery for his use and benefit, as it appears affirmatively that it was not to be delivered to Marks, but was to be returned to the orator when he should call for it. The deed was always subject to his control from the time it was executed until it was destroyed by fire.

But it is insisted on the part of the defendants that if the deed did not operate to transfer the title to the land to Marks, the orator has so conducted himself in respect to the matter, that he is estopped from now asserting his title to it as against these defendants.

It is apparent from the testimony that the principle object that the orator had in view, and sought to accomplish by executing the deed, and having it filed in the town clerk's office, was to prevent his creditors attaching the property, and to this end he repeatedly asserted to various persons that Marks owned the land, but to Marks he told the truth about it, he told him the deed was recorded by mistake, but he never told Marks the deed was left at the town clerk's office for him to take, and never gave him the right to suppose it was left there for any such purpose.

Marks never trusted him for a dollar after he knew the deed was executed, on the strength of it. And when Marks gave the orator a receipt in full he knew all the facts in relation to the deed as well as the orator; he knew it had never been delivered to him, and was bound to know that without a delivery it transferred no title, so that

so far as Marks is concerned there are no facts in the case that should prevent the orators claiming his right to the land.

As to Bromley, Leach & Co., it does not appear that they had any knowledge whatever of the transaction up to the time they set off the land upon their execution. One of the firm testifies that they trusted Marks because they had heard that he owned a farm in Winhall, but it does not appear that they had ever heard that he owned this farm, or that the orator had deeded a farm to him, or that the orator had said anything to them upon the subject, or that they had heard of anything that the orator had said to others in respect to it. The testimony therefore utterly fails to establish any fact that is necessary to constitute an estoppel of this kind.

As the orator's bill does not embrace any matter properly relating to the three hundred dollar debt due from the orator to Marks, or the land embraced in the mortgage given to secure that debt, the decree in this case cannot effect either.

The result is the orator is entitled to a decree according to that part of the prayer in his bill in which he prays for a decree that the defendants be perpetually enjoined from setting up any claim to the premises described in the bill under the said deed from the orator to Marks, executed in 1853, or under the levy and set off, on the execution in favor of Bromley, Leach & Co., against the orator, of the same land.