### GILBERT HAWKES & another *vs.* FRANCIS PIKE.

A register of deeds wrote a deed, which the grantor signed and sealed and left with him
to be recorded. The register had no authority from the grantee, who was absent, to re-
ceive or keep the deed for him; and did not undertake to act for him; and gave the deed
back to the grantor, after recording it. *Held,* that there was no delivery of the deed to
the grantee.

BILL IN EQUITY by Gilbert Hawkes and Daniel Fairchild to
redeem a lot of land in Lynn from a mortgage. The bill alleged
the making of the mortgage by Daniel Fairchild, while he was
owner of the premises; his subsequent conveyance of the equity
of redemption to Hawkes to hold in trust for him; and the desire
and willingness of himself and Hawkes to pay what was due on
the mortgage. The defendant filed a plea denying the right of the
plaintiffs to redeem, and alleging that Daniel Fairchild executed
and delivered a deed of the premises to Silas Fairchild before his
deed to Hawkes. The plaintiff filed a replication, traversing the
delivery of the deed to Silas Fairchild; and the case was heard
before *Ames*, J., on that issue, and reported for the revision of
the full court. The following is the substance of the report:

The deed from Daniel Fairchild to Silas Fairchild, and also
the deed from Daniel Fairchild to Hawkes, were put in evidence.

the former was dated and acknowledged April 11, 1860 ; the latter was dated and acknowledged April 12, 1860.

Ephraim Brown, register of deeds for the county of Essex, testified for the defendant, " I wrote the deed from Daniel Fairchild to Silas Fairchild, and certified the grantor's acknowledgment. He left it with me for registration." And on cross-examination he testified : " I made the deed at his request ; he signed, acknowledged, and left it with me. The next day he called with Abner C. Goodell, wanted the deed, and said he did not want it to be recorded. At that time I had partially recorded it, and so refused to give it back. Silas, the grantee, was then in California. I had no authority from Silas. The next day I gave the deed back to Goodell. I do not think Daniel Fairchild was then present. I understood Goodell to act for Daniel Fairchild." The defendant here rested his case.

Daniel Fairchild, called by the plaintiffs, testified thus : " I am seventy-five years of age. I had a deed made out to Silas, by Register Brown. I went to get, but did not get it. Brown said he had begun putting it on record, and must finish it. I was accustomed to the practice in Vermont of putting deeds on file, not to be considered as recorded, but subject to recall, and supposed that I could do so here. My motive for making this deed was that there had been a threat of putting me under guardianship. For some reason, I had had a calculation of having Silas live with me to take care of me. I wanted to recall the deed, because Silas might become unfortunate and so the place be taken away from him. I think I was not present when Goodell took back the deed. It was never given to Silas, in hand, that is. After considering, I did not calculate to have the deed go." On cross-examination, he testified : " I had written to Silas to come home ; had been expecting him for years ; and expected him that spring. He had sent me money from time to time. I did not make that deed because I owed him ; I was calculating he would take care of me. It was on account of the guardianship ; I supposed he would deed back to me, if no guardian should be appointed. I meant to have it so that it could be put in the market and sold. I thought I could trust him, and that he would come and live

with me. I meant that all the heirs should have what belonged to them, except enough to pay him for taking care of me. I calculated to have the deed recorded, and had an idea of sending it out to Silas. I changed my mind because I was afraid he would be unfortunate and lose his property. It was my second thought that induced me to take the deed back; my first thought was, that he would deed back when I wanted it. I went of my own accord to get the deed back."

Abner C. Goodell testified to the execution of the deed to Hawkes, and also thus : " I went with Hawkes and Daniel Fairchild to the registry of deeds; I was called on by Fairchild to do so. I told the register that at Fairchild's request I demanded that deed. He said that it was partially spread on the record ; the record had begun when Fairchild called; he would give it to me when the record was finished. I was authorized by Fairchild, in the register's presence, to take the controverted deed. I think it was given me the same day the deed to Hawkes was made."

The defendant in reply called Silas Fairchild, who testified : " Father wrote to me that he would make me a deed. I expected that he would ; and if I had been at home I should have taken it from the register. I always claimed that the deed was mine."

Some letters from Daniel Fairchild to Silas Fairchild were also put in evidence.

Upon the evidence, the judge found for the defendant, and ordered that the bill be dismissed ; and the plaintiffs appealed.

*J. G. Abbott,* (*G. Wheatland* with him,) for the plaintiffs.

*S. B. Ives, Jr.,* for the defendant.

AMES, J. A deed of real estate, in order to take effect as a conveyance of title, must be delivered by the grantor, and actually or by implication accepted as his own by the grantee. 3 Washb. Real Prop. (3d ed.) 254. No definite or specific formality is prescribed by law, but it must be the concurrent act of two parties. It must appear that the grantor parts with the control and possession of the instrument with the intention that it shall operate immediately as a transfer of title, and that it passes into the hands or is placed at the disposal of the grantee, or of some

other person in his behalf. *Harrison* v. *Phillips Academy*, **12** Mass. 456. *Maynard* v. *Maynard*, 10 Mass. 456. *Elmore* v. *Marks*, 39 Verm. 538. *Jackson* v. *Phipps*, 12 Johns. 418. The register of deeds may have been the person agreed upon as the agent of the grantee, and in such a case a deed left with him for record is sufficiently delivered. But registration of itself does not operate as a delivery, nor does it supersede the necessity of proof of a delivery. *Parker* v. *Hill*, 8 Met. 447. *Samson* v. *Thornton*, 3 Met. 275.

In this case, there was no delivery directly to the grantee, who was in California at the date of the deed; and we see nothing in the report that shows a delivery to any person for him. The scrivener who drew up the deed at the grantor's request had no authority from the absent grantee, and did not undertake to act for or to represent him. He assumed no trust, and came under no responsibility to him. He was not requested to keep the deed for him, or send it to him. He was employed by the grantor only, and all that he was to do, or undertook to do, was in his official capacity of register to record the deed; and the only reason which he gave for not giving it up when called upon was, that the record had been begun but not finished. It was then simply a delivery to the register for the purpose of registration, which is wholly insufficient to pass any title to the grantee. There was no agent to accept the deed; no delivery to give effect to the deed as a conveyance. On the contrary, it appears from the grantor's testimony, which seems to be uncontradicted, that the delivery which he had in his mind was, to take the deed from the register and send it by mail to his son in California.

The letters, upon which the defendant relies to show that the grantor intended to convey the property to his son, are not at all inconsistent with a total change of mind before that intention was carried into effect.  *Decree reversed.*