**KING v. ANTRIM LUMBER CO. et al.**

No. 8274—Opinion Filed Dec. 11, 1917.

Rehearing Denied May 21, 1918.

(172 Pac. 958.)

**1. Deeds—Conveyance of Title—Delivery.**

Where a deed is made without consideration to an infant of tender years not of kin to the grantor, and placed by the grantor upon record, and after the deed is recorded it is returned to the grantor and never delivered to the grantee or any one for her, and the intention of the grantor in making the deed was not to pass title to the grantee, but to place the property where it could not be reached for a legal liability of the grantor, and the possession of the property continuously remained in the grantor, there was not such a delivery of the deed as necessary to convey title thereby to the grantee, and such infant is not entitled to recover such property of such grantor.

**2. Equity—Deeds—Relief—Clean Hands.**

Where a deed is executed and placed on record by a grantor for the purpose alone of placing the property beyond the reach of his creditors, and such deed is not delivered by the grantor to the grantee or any one for her, but is surreptitiously taken by and is in her possession, and the grantor brings action praying for the removal of the cloud created by such deed upon such property, and for the cancellation of the deed and record thereof, equity will deny such relief for the reason that the grantor does not come into court "with clean hands," and therefore "equity leaves him where it finds him."

(Syllabus by Collier, C.)

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Action by the Antrim Lumber Company to foreclose a mechanic's lien against W. B. King and Minnie Zschornack, in which Minnie Zschornack was permitted to interplead, with answer and cross-petition by W. B. King to the petition of intervention, and in which the Antrim Lumber Company by demurrer to the evidence was eliminated from the case. Judgment for intervener quieting her title against defendant King, his motion for a new trial overruled, and he brings error. Reversed and remanded, with instructions to dismiss the intervention and the cross-action.

A. M. Beets, for plaintiff in error.

Richard A. Billups, for defendants in error.

Opinion by COLLIER, C. This action was brought by the Antrim Lumber Company to foreclose a mechanic's lien on lots described in the petition against the defendant W. B. King and Minnie Zschornack, alleging that the title to said property was in Minnie Zschornack, but that transfer from the defendant King to Minnie Zschornack was void as being without consideration. Thereafter R. Brett, as amicus curiae, filed motion to make Minnie Zschornack a party to the cause. Minnie Zschornack was permitted to interplead and set up her rights in said cause; the important part of said interplea being as follows:

"(3) Your interpleader further states to the court: That she is and has been the owner in fee of the real property set out in plaintiff's petition, to wit: Lots twenty-one (21), twenty-two (22), and twenty-three (23), in block fifty-eight (58), in the town of New Cordell, Okla., and lots seventeen (17) and eighteen (18), in block fifteen (15), East Hill addition to New Cordell, Okla., since the 19th day of April, 1906. That on said day and date W. B. King, then a single man, conveyed said real property and

all of the same to this interpleader by good and sufficient warranty deed, which deed is now held by this interpleader, and is on record in the office of the register of deeds of Washita county, Okla., same having been filed for record the 19th day of April, 1906, at 8:10 o'clock a. m. of said date, and recorded in volume 14, page 233, of the records of said office; a copy of said deed is filed herewith, as a part hereof, marked Exhibit A. That the said W. B. King has no right, title, or interest in said property, nor any part thereof. That no other person or persons have any right, title, or interest in and to said property or any part thereof, except your interpleader herein, who is the legal holder and owner of all of said real property.

"(4) Your interpleader further states that the register of deeds, in copying and recording said deed to said property, incorrectly copied the name of the grantee in said deed, the name of said grantee appearing of record as Minnie S. Schornack, instead of Minnie Zschornack, which is the real and true name which appears in the original deed presented for record; that your interpleader did not know of said mistake in the recorder's office until her attention was called to same upon the filing of this suit, but presumed that said register of deeds had correctly recorded the deed presented for record as was his duty to do.

"(5) Your interpleader specifically denies that the plaintiff herein has any interest in or lien upon the above-described property of your interpleader, by reason of the pretended lien statement filed herein, but states, as aforesaid: That this interpleader was at that time, and has been ever since, and is now, a minor under the age of 21 years, and of the age of 16 years at this time, and owes the plaintiff nothing.

"(6) That said pretended lien statement is a cloud upon the title of this interpleader, and said cloud should be removed.

"Wherefore, your interpleader prays that the plaintiff take nothing of her by reason of said lien; that said lien statement be declared void as a lien against the property of this interpleader, and that the cloud on the title created by reason of said lien statement be removed, and that the record in the office of the register of deeds be corrected and made to show the real name of the grantee in said deed as shown by the original deed to said property, and that she go hence with her costs in this behalf expended, and for other proper relief."

W. B. King filed his answer and cross-action to the petition of intervention filed by the interpleader, Minnie Zschornack; the material averments of said amended answer and cross-action being as follows:

First. That he denies each and every material allegation contained in said interplea.

Second. For his second and further answer to said interplea, the said defendant alleges and states that he is the owner in fee simple of lots 21, 22, and 23, in block 58, in the city of New Cordell, Okla., and lots 17 and 18, in block 15, East Hill addition to the city of New Cordell, Okla., all in Washita county, as described in said plea of intervention. That said intervener has no right, title, or interest in said premises, but alleges the fact to be that on the 19th day of April, 1906, the said defendant W. B. King executed a deed to said property to Minnie Zschornack, but that said deed was executed without consideration and was not delivered to the said Minnie Zschornack or said interpleader or any other person for her benefit, and that the title to said premises was not intended to pass and did not pass from said defendant. That said defendant was at said time, and has been at all times since, in possession of said premises, and has paid the taxes and made valuable improvements thereon. Defendant further states that the deed so made at said time and place on record is a cloud upon defendant's title, and that unless the same is canceled, set aside, and held for naught said defendant will be unable to dispose of said property. Defendant further says that, if the intervener herein has possession of said deed as alleged in said petition of intervention, the same was surreptitiously and fraudulently obtained without the consent of the said defendant.

Third. Defendant further states that, in the event that the court should hold that the deed herein involved was delivered to the interpleader as a matter of law, then said defendant alleges the facts to be that said interpleader holds the legal title to said described property in trust for the use and benefit of this defendant W. B. King. That the said W. B. King is the owner of the equitable title thereto, and that said interpleader has no right whatever in the equitable title to said property.

Wherefore said defendant prays that the deed heretofore executed by the said W. B. King to the said Minnie Zschornack be set aside, canceled, and held for naught, and his title quieted against the said Minnie Zschornack; or that the court declare the said Minnie Zschornack to hold the title in trust for the said defendant W. B. King, and for such other and further relief as the court may deem the defendant entitled to in law and equity.

To said amended answer and cross-action the interpleader, Minnie Zschornack, filed a general denial. The Antrim Lumber Company, by demurrer to its evidence, was eliminated from the case, and the trial of the case proceeded upon the issue joined between the interpleader, Minnie Zschornack, and W. B. King.

The material evidence is that W. B. King was a single man and owned the property in litigation; that the mother of Minnie Zschornack was keeping house for him; that Minnie was then a little girl about six years old; and that King got into some difficulty regarding a suit which he had against some parties, and fearing the result of the litigation executed a deed to the little girl, and placed the deed on record; that after the deed was recorded it was returned to King and remained in his possession for several years, and never was delivered to the interpleader; that King married the interpleader's mother and the interpleader lived with King and his wife; that thereafter trouble arose between the parties, and the interpleader took the deed from King's possession without his knowledge and left home; that King continued to remain in possession of the property, paid the taxes thereon, and received the rents; that he made improvements from time to time, which he paid for; that said King about the time of the execution of the deed informed the interpleader that he was deeding the property in controversy to her; that subsequently when the interpleader in the interest of said King was summoned to court she was instructed by King to swear that she came by the property in controversy from money she had inherited from her father, and that King had borrowed from the interpleader's mother and that her mother told King just to deed the property to interpleader instead of replacing the money.

King testified that he met J. K. Little, the attorney on the other side of the case, down at the Finerty Bank, who said, "I think we can get the costs on to you," that caused him to put this property into somebody's name for safe-keeping; that he went to Mr. Coker and had this deed written up and had it recorded; that after its record the recorder delivered the deed to him; that when the intervener left home he missed the deed; that he positively never intended to deliver the deed to Minnie Zschornack or convey the property to the intervener; that he had been constantly in possession of the property in controversy, and also of the deed until the intervener took the deed. The intervener testified that she had never paid any consideration for the property involved; that she had never been in possession of or paid taxes on said property; and that she had never been in possession of the deed until she took it from the papers at home, and that no one was present when she took it.

Judgment was rendered for the intervener "that the title to the real estate involved in this action both legal and equitable be, and the same is, vested in said Minnie Duncan, formerly Minnie Zschornack, and that the defendant W. B. King be and is forever denied any right, title, or interest in and to said lots or either of them, and the title of the said Minnie Zschornack Duncan to said lots is forever quieted as against the said W. B. King, or any person or persons claiming or to claim under him." To the rendition of said decree the said W. B. King duly excepted. The Antrim Lumber Company was adjudged to pay costs, but did not except thereto. W. B. King made timely motion for a new trial, which was overruled and excepted to, and error brought to this court. The Antrim Lumber Company not having excepted to or appealed from the judgment rendered against it, no question is presented as to the action of the court in rendering judgment against said company on the demurrer interposed to its evidence or in taxing it with costs; the appeal being taken by W. B. King alone.

We do not think that, as contended by the plaintiff in error, and to which question the discussion of both briefs is principally directed, the transaction under consideration created a trust in favor of W. B. King, or that a question of trust is at all involved therein. We are of the opinion that there are but two questions for proper determination of this cause: (1) Was there such a delivery of the deed executed by the grantor to the intervener as to pass title to the intervener? (2) Does the evidence show that King was entitled to the relief prayed for in his cross-action? We are of the opinion, and so hold, that both of said questions must be answered in the negative.

In Powers v. Rude, 14 Okla. 381, 79 Pac. 89, it is held:

"A deed does not take effect or operate to pass title until it is delivered."

In Hunter, etc., Co. v. Spencer, 21 Okla. 155, 95 Pac. 757, 17 L. R. A. (N. S.) 622:

"No title will pass by a deed which is not delivered by the grantor or some one duly authorized by him."

In Daniel et al. v. John P. London Co. et al., 44 Okla. 297, 144 Pac. 596, it is held:

"A deed signed and acknowledged, but not delivered, is not effective as a conveyance, and does not transfer or pass title."

It is not even contended by the intervener that there was a manual delivery of the deed

from W. B. King to her or to any one for her, and thus the deed did not convey title to her, unless under the evidence herein the record thereof was a delivery to her. We are not cited in either brief to, and have not been able to find, any opinion by this court in which the question of the effect of recording a deed by the grantor and the retention of the deed by him as to delivery to the grantee has been determined, but we are of the opinion, and so hold, that, while the authorities are not entirely harmonious, the great weight of authority is that the recording of a deed to a minor is not such delivery as would pass title to such minor, unless it was the intention of the grantor that such recording was to operate as a delivery, so shown by evidence.

The registration of a deed by the grantor might, perhaps, in the absence of opposing evidence, justify a presumption of delivery, but such presumption is repelled where the registry was made without the knowledge or assent of the grantee, and the property it purported to convey always remained in the possession and under the control of the grantor. Younge v. Guilbeau, 3 Wall. 636, 18 L. Ed. 262.

The recording of a deed by a grantor does not of itself constitute a delivery. It depends upon the grantor's intention. Humiston v. Preston, 66 Conn. 579, 34 Atl. 544; Moore v. Giles, 49 Conn. 570; Jamison v. Craven, 4 Del. Ch. 311; Masterson v. Cheek, 23 Ill. 72; Weber v. Christen, 121 Ill. 98, 11 N. E. 893 (2 Am. St. Rep. 68); Hutton v. Smith, 88 Iowa, 238, 55 N. W. 326; Berkshire Mut. F. Ins. Co. v. Sturgis, 13 Gray (Mass.) 177; Glaze v. Three Rivers Farmers' Mut. F. Ins. Co., 87 Mich. 349, 49 N. W. 310 (595); Babbitt v. Bennett, 68 Minn. 260, 71 N. W. 22; Doorley v. O'Gorman, 6 App. Div. 591, 39 N. Y. Supp. 768; Hayes v. Davis, 18 N. H. 600; Thompson v. Jones, 1 Head (Tenn.) 576; Chess v. Chess, 1 Pen. & W. 32, 21 Am. Dec. 350.

"The fact that the grantor executed the deed and had it recorded does not amount to a delivery where it is proven as a fact that he never intended to make it his deed except under a contingency which never happened." Jones v. Bush, 4 Har. (Del.) 1.

"The registration of a deed by the grantor does not of itself operate as a delivery, nor does it supersede the necessity of proof of a delivery." Hawkes v. Pike, 105 Mass. 560, 7 Am. Rep. 554.

In Barnes v. Barnes, 161 Mass. 381, 37 N. E. 379, the delivery of a deed was held not to be shown, in a controversy between the grantor and the grantee, under the following

circumstances: The plaintiff signed and sealed a deed to the defendant, and caused it to be recorded, intending at the time to pass the title to the defendant, but without doing or saying anything else to manifest that intention. He afterwards received the deed back from the recorder and it was never in the possession of the defendant, or of any one representing her, and, when requested by her counsel to surrender the deed, refused to do so. Before such request, but after he had received the deed back from the registry, he communicated its existence to the defendant, and spoke to her of the land described in it as hers, as he then supposed it was. The defendant assented, so far as she could, to the transaction. The ground of the decision is that there was no act or declaration on the part of the grantor manifesting his intention that the recording of the deed should be regarded as a delivery; the court holding that it was necessary that such intention be manifested by some act or declaration, other than the mere recording of the deed itself.

In Beckett v. Heston, 49 N. J. Eq. 510, 23 Atl. 1014, where the grantor herself sought to set aside a deed to her son, the court held that there was no delivery, and that she was entitled to the relief sought, notwithstanding that after having executed the deed in question she left it with the conveyancer to have it recorded, and that it was recorded accordingly. It appeared in this case that after the deed was recorded it was sent to the grantor, and that, upon receiving it, she informed her son of its execution, but did not part with its possession or control at any time. The court said that when she sent the deed to be recorded it was not with the intention to have the registration operate as a delivery.

In Moore v. Giles, 49 Conn. 570, an action by a father to remove as a cloud upon h's title a deed executed by him to an infant and placed on record by him, the trial court found as a fact that the grantor, influenced by fear of a creditor, as well as by affection for the grantee "with the intent and purpose of giving to the said * * * (grantee) his title to said land, * * * executed said deed and caused the same to be recorded." The appellate court held that such finding was determinative of the question of delivery, and that the proved facts that a month elapsed between the execution and delivery of the deed to the town clerk, that the grantor did not place it in the hands of the grantee, and that he retained possession of the land, of necessity exhausted their force upon the

minds of the court below, and were not to be considered by the appellate court.

"Where a father executes a voluntary deed to his minor children and has it recorded and then takes it and keeps it in his possession, there is no delivery to the children, and no estoppel against the father to deny a delivery, where he did not do such acts for the purpose of giving effect to the deed, but to protect himself against a threatened claim for alimony." Kopplemann v. Kopplemann (94 Tex. 40) 57 S. W. 570.

The unquestioned evidence is that the deed was never in fact delivered to the intervener, but was surreptitiously taken by her many years after the execution of the deed; that the deed after it had been placed upon record was returned to and retained by the grantor, together with possession of the property conveyed thereby, and that the intention of the grantor in executing the deed was not to convey title to the intervener but to place the property where it could not be reached for a legal liability that might arise against him.

In Johnson et al. v. Craig et al., 37 Okla. 378, 130 Pac. 581, it is held:

"Where there is a question as to whether there had been a delivery of a deed of conveyance, the real test is the intention of the grantor, which intention may be manifested by mere acts or by words or both combined, and such acts and words and the circumstances relevant thereto are susceptible of parol proof."

In the body of the opinion, it is said:

"That such question is one of fact to be determined by the circumstances, actions, statements, and intention of the grantor is the consensus of authorities. 14 Ballard on Real Property, §§ 146-152; 3 Devlin on Deeds (3d Ed.) § 265; 9 Am. & Eng. (2d Ed.) 154; 13 Cyc. 750, and authorities cited by the foregoing text-writers."

It is placed beyond question by the evidence in this case, especially the retention of the deed after its record, and the possession and enjoyment of the property as his own by King, and the uncontradicted evidence of King as to his intention in executing and recording the deed, that the intention of King was for the sole purpose to protect the property from a legal liability, and therefore said deed did not pass title to the intervener, and she was not entitled to recover the property. The intervener not having paid any consideration for the property, or assumed any liability on account thereof, and never having been in possession of the property, nor the deed delivered to her, was entirely without the right to any equitable consideration in her behalf.

The unquestioned evidence is that the purpose of King in executing and placing the deed upon record was a fraudulent act, and therefore King "does not come into court with clean hands," and consequently equity will not grant him the relief prayed for "but will leave him where it found him." It is a well-settled maxim of equity that he who comes into equity must come with clean hands.

"The principle of the maxim is that a court of equity will leave the guilty party seeking its aid where it finds him. Not only does it refuse, as has been seen, to carry to fruition a fraudulent, illegal, or otherwise unconscionable transaction, but where such transaction has been in whole or in part carried out it refuses to undo it on the application of a guilty participant, and refuses to relieve him from legal liabilities or other consequences of his misconduct." 16 Cyc. 145, § 3, and the very many authorities there cited.

It follows that the court did not err in refusing the relief prayed for by King for the cancellation of the deed and the record thereof, and the removal of such cloud from the title to the property involved. The interpleader not being entitled to recover in this action as sought by her interplea, the court committed reversible error in overruling the motion for a new trial.

This cause is reversed and remanded, with instructions to the trial court to dismiss the intervention of the intervener, and to dismiss the cross-action of the plaintiff in error, and tax the plaintiff in error with costs, other than the costs heretofore awarded against the Antrim Lumber Company.

By the Court: It is so ordered.