[L. A. No. 18890. In Bank. Dec. 28, 1944.]

JOHN F. N. GAVINA et al., Respondents, v. LON V. SMITH, Appellant.

502

Hanna & Morton, Borton, Petrini, Conron & Borton, J. G. Crichton and J. M. McRoberts for Appellant.

Sidney J. W. Sharp and M. Wingrove for Respondents.

TRAYNOR, J.—In this action to quiet title, defendant Lon V. Smith appeals from a judgment sustaining both special and general demurrers to his second amended answer, without leave to amend. On March 18, 1942, plaintiffs John F. N. Gavina and A. F. Silveria, the owners in fee of 2,209.50 acres of land in Kings County, granted to defendant for $100 the option of leasing the property for the purpose of operating for oil and gas. The option agreement set forth the terms and conditions on which the lease was to be executed. The form of lease was to be the form attached to the option agreement. Plaintiffs were to receive a rental of $1.00 per acre for one

year payable in advance. If drilling operations were not commenced within one year from the date of the lease, the lessee could extend the period of the lease for four years by paying $1.00 per acre for each year. Plaintiffs' royalty was to be one-eighth of all oil, gas or other hydrocarbon. substances produced. Surface rights were ·to be retained by plaintiffs for agricultural purposes to an extent that would not interfere with the lessee's operations, and the lessee was to pay for any injury to livestock, trees, crops and improvements caused by oil and gas operations under the lease.· Upon the exercise by defendant of the option and the payment in advance to plaintiffs of a rental of $1.00 per acre for one year, plaintiffs agreed to execute and deliver a completed oil and gas lease on the attached form covering the 2,209.50 acres. The agreement provided that the money for the rental could be deposited in escrow with instructions that it be paid to the lessors upon receipt of the executed oil and gas lease. The money paid for the option was to be considered part payment of the rental. The defendant exercised the option and deposited $2,209.50 in escrow as specified. · The form of lease attached to the option agreement was completed by the escrow-holder according to instructions and turned over to plaintiffs for their signatures. They failed to sign it or return it for the defendant's signature, which was to be affixed after their own. They did not accept the money tendered, and they offer to return the $100 received for the option.·

Plaintiffs contend that upon the exercise of the option defendant had merely an executory contract to make a lease; that although an executed lease would be a good defense to a quiet title suit, an executory contract that is not specifically enforceable is no defense to such a suit; and that the present contract is not specifically enforceable on the ground of lack of mutuality of remedy.

■ Whether the exercise of an option creates a lease or merely an executory contract to make a lease depends primarily upon the intention of the parties. It was the intention of the parties, expressed in the option agreement, to set forth therein and in the attached form of lease all the terms and conditions on which plaintiffs offered to lease the property. By exercising the option, defendant accepted plaintiffs' offer and agreed to lease the property upon those terms and conditions. The requirement of a written lease was fully met, for

the option agreement was in writing signed by the plaintiffs, and the option was exercised in writing by defendant. Nothing more was required to make a binding lease, so long as the parties did not intend that more should be done before the lease became effective. (*Pacific Improvement Co.* v. *Jones,* 164 Cal. 260, 263 [128 P. 404]; *Levin* v. *Saroff,* 54 Cal.App. 285, 289 [201 P. 961]; see *Smith* v. *Bangham,* 156 Cal. 359, 362 [104 P. 689, 28 L.R.A.N.S. 522]; *Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Sales Corp.,* 61 Cal.App.2d 55, 56 [141 P.2d 938]; see Foa, The Relationship of Landlord and Tenant (5th ed.) 73). Plaintiffs' contention that only a contract to make a lease was created by the exercise of the option is based upon the understanding that the form of lease attached to the option agreement was to be completed and signed by the parties after the exercise of the option. ■ Where the parties, however, have agreed in writing upon the essential terms of the lease, there is a binding lease, even though a formal instrument is to be prepared and signed later. (*Pacific Improvement Co.* v. *Jones, supra; Levin* v. *Saroff, supra.*) The formal instrument may be more convenient for purposes of recordation and better designed to prevent misunderstanding than the other writings but it is not essential to the existence of the lease. ''The mere fact that a written lease was in contemplation does not relieve either of the contracting parties from the responsibility of a contract which was already expressed in writing. When one party refuses to execute the lease according to the contract thus made, the other has a right to fall back on the written propositions as originally made, and the absence of the formal agreement contemplated is not material.'' (*Levin* v. *Saroff, supra,* at p. 290; see, also, *Pacific Improvement Co.* v. *Jones, supra,* at p. 264.) Since the execution of the formal contract would add nothing to what the parties had already agreed upon, there is no reason to hold that they contemplated a waiting period between the exercise of the option and the date the lease was to become effective. It is clear from the provision of the option agreement that upon the exercise of the option defendant should pay $1.00 per acre as rent for the first year that it was the intention of the parties to make the lease effective upon the exercise of the option. ■ The agreement gave defendant the right to elect whether he was to pay the rent directly to plaintiffs or to deposit it with an abstract company named

in the agreement, the latter to turn it over upon the completion of the formal lease. It is immaterial that defendant chose one method of fulfilling his obligation rather than the other because it insured his getting the formal instrument to which he was entitled under his contract with plaintiffs.

It is settled in this state that an oil lease like the one in the present case creates a profit à prendre and vests in the lessee an estate in real property (*Callahan* v. *Martin,* 3 Cal.2d 110, 122 [43 P.2d 788, 101 A.L.R. 871]; *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal.2d 128 [43 P.2d 797]; *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637 [52 P.2d 237]; *Dabney* v. *Edwards,* 5 Cal.2d 1, 11 [53 P.2d 962, 103 A.L.R. 822]; *Pimentel* v. *Hall-Baker Co.,* 32 Cal.App.2d 697, 702 [90 P.2d 588]), and that the owner may not quiet his title against such a vested interest. (*Pimentel* v. *Hall-Baker Co., supra,* at p. 706; *Sandrini* v. *Branch,* 32 Cal.App.2d 707, 710 [90 P.2d 593]; *Title Ins. etc. Co.* v. *Miller & Lux Inc.,* 183 Cal. 71, 87 [190 P. 433]; *Williams* v. *Rush,* 134 Cal.App. 554, 557 [25 P.2d 888].) It is immaterial whether the defendant could get a decree for specific performance if he sought it, for he has a legal interest in the property and legal remedies to enforce it independently of the remedy of specific performance. (*Callahan* v. *Martin, supra,* at pp. 126, 127; *Dabney-Johnston Oil Corp.* v. *Walden, supra,* at p. 650; *Julian* v. *Schwartz,* 16 Cal.App.2d 310, 330 [60 P.2d 887]; *Chandler* v. *Hart,* 161 Cal. 405, 424 [119 P. 516, Ann. Cas. 1913B 1094]; *Frisbie* v. *McClernin,* 38 Cal. 568, 571; *Guffey* v. *Smith,* 237 U.S. 101, 115 [35 S.Ct. 526, 59 L.Ed. 856].)

Even if it be assumed that upon the exercise of the option there was only an executory contract to make a lease, plaintiffs would not be entitled to have their title quieted against the claims of defendant under the contract. Plaintiffs could not complain that the lease was not executed when it was their breach of contract alone that prevented it from being executed. (Civ. Code, § 3517; *Miller* v. *Dyer,* 20 Cal.2d 526, 530 [127 P.2d 901, 141 A.L.R. 1428]; *McCall Co.* v. *Wright,* 198 N.Y. 143 [91 N.E. 516, 31 A.L.R.N.S. 249].) An action to quiet title involving equitable issues is governed by equitable principles. (*Brandt* v. *Wheaton,* 52 Cal. 430, 434; *Benson* v. *Shotwell,* 87 Cal. 49, 60 [25 P. 249, 681]; *Akley* v. *Bassett,* 68 Cal.App. 270, 285 [228 P. 1057]; *Logan Gas Co.* v. *Keith,* 117 Ohio St. 206, 213 [158 N.E. 184, 58 A.L.R. 600]; *Oconto Co.* v. *Bacon,* 181 Wis. 538 [195 N.W. 412, 40 A.L.R.

175] ; *King* v. *Antrim Lumber Co.*, 70 Okla. 52 [172 P. 958, 4 A.L.R. 21] ; see 44 Am.Jur., Quieting Title, § 67.) In the present case the plaintiffs are not doing equity (*Holland* v. *Hotchkiss*, 162 Cal. 366, 375 [123 P. 258, L.R.A. 1915C 492]) nor have they come into equity with clean hands (*Universal Milk Co.* v. *Wood*, 205 Cal. 751 [272 P. 745]). Having wrongfully breached their contract they now seek the aid of equity to quiet their title against any claims arising under the contract. ■ One who violates his contract cannot have recourse to equity to support that very violation. (*Shimpones* v. *Stickney*, 219 Cal. 637, 649 [28 P.2d 673] ; see 10 Cal.Jur. 517 ; 4 A.L.R. 44, 73.)

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J. and Schauer, J., concurred.