[Civ. No. 22131.   Second Dist., Div. One.   July 15, 1957.]

JACK JAY JACOBS et al., Appellants v. IRVING
SCHNEIDER, Respondent.

J. Merrill Lilley for Appellants.

Samuel Lackman for Respondent.

WHITE, P. J.—Plaintiffs, real estate brokers, have appealed from an adverse judgment in their action for commissions alleged to have been earned by them. Plaintiff Jacobs was employed by defendant. In numerous conversations had between them over a period of months, defendant agreed that he would pay the usual commission if Jacobs secured a satisfactory lessee of a building which defendant proposed to build on land owned by him. Jacobs agreed to divide his commission with the other plaintiffs, who were real estate brokers representing prospective lessees.

Jacobs and the other plaintiffs arranged a meeting and on November 15, 1954, brought together defendant and Drs. Heller and Magnall, who were interested in a long term lease if de-

fendant would erect on his land a medical building satisfactory to them. At that meeting, as stated in appellants' opening brief, "after discussion, the general agreement of the doctors and defendant was reduced to writing and signed by them." That agreement is as follows:

"November 15, 1954

"This agreement entered into this 15th day of Novr. 1954 between Irving Schneider, party of the first part., and Drs. Robert Heller and James G. Magnall, parties of the 2nd part.

"Party of the first part agrees to:

First—Erect a Medical building at 2nd St. and Santa Ana, Long Beach of approximately 4,000 sq. ft. Plans to be subject to approval of parties of 2nd part.

"Parties of 2nd part agree to:

Lease said Medical building for a period of ten (10) years at a monthly rental of $1,000.00 (One Thousand dollars) a month. The rental of 1st and last 6 months to be payable in advance.

"Robert A. Heller
James G. Magnall
Irving Schneider"

In October of 1954, according to the testimony of the architect, the defendant hired him to lay out sketches and designs for a two story building, where the second floor would be offices, and the first floor would be stores, or possibly medical offices.

December 6th, the architect, the plaintiffs and the prospective lessees met and discussed the requirements of the doctors in connection with the premises of defendant.

January 7, 1955, they had another meeting, where the architect had available preliminary sketches based on the discussions of December 6th. The architect then advised them that it would be another two months to 10 weeks before actual working drawings would be ready for the doctors' approval, and it would take about six months more to erect such a building.

A few days later, plaintiff Jacobs told the defendant he thought he had a buyer for the whole deal, land, lease, etc., and thereafter the defendant told the architect to hold plans in abeyance until the possible sale was considered.

Later in January, the defendant received the two letters hereafter set forth. He answered neither.

"January 20, 1955
Irving Schneider
Times Building
Long Beach, California

Dear Mr. Schneider:

It is now over two months since we entered into agreement for the erection of a medical center on your lots near Santa Ana and East 2nd Street in Belmont Shore. As the time element is very important, will you please advise us as to when the plans for building can be submitted for approval.

Yours sincerely,
Robert A. Heller"

and

"January 26, 1955
Irving Schneider
Times Building
Long Beach, California

Dear Mr. Schneider:

Since we have waited four months and you have not answered our letter of inquiry of January 20, 1955, we hereby withdraw our offer to lease a medical building of approximately 4,000 square feet, said building to be erected on your property located at Santa Ana and East 2nd Street, Long Beach.

Very truly yours,
Dr. Robert A. Heller
Dr. James Magnall"

Plaintiff brokers urge that "by the execution of said agreement (of November 15th) the defendant accepted the doctors as responsible persons, and agreed to the general terms of a lease to be drawn, and therefore, as of that minute, the brokers had earned their commission."

The court found that "the defendant did not thereby accept the prospective lessees as his lessee, and the said instrument was in fact only an agreement to lease in the future if building plans were approved, and satisfactory terms and conditions of lease were negotiated by plaintiffs acting as aforesaid for and on behalf of, and by and between defendant and said prospective lessees, namely, Robert Heller and James G. Magnall, and if a valid lease of the proposed building was executed between defendant and the said prospective lessees."

Appellants urge that the document of November 15, 1954, cannot properly be interpreted to support the findings, conclusions and judgment, and state that that is the only issue to be determined by this court.

Appellants rely upon the case of *Mann* v. *Mueller*, 140 Cal. App.2d 481, 487 [295 P.2d 421], and particularly upon the following language quoted therefrom: "Where the parties . . . have agreed in writing upon the essential terms of their contract, even though several more formal instruments are to be prepared and signed later, the written agreement which they have already signed is a binding contract. When one party refuses to execute the more formal instruments intended, the other has a right to rely upon the agreement already expressed in writing. (*Gavina* v. *Smith*, 25 Cal.2d 501, 504 [154 P.2d 681].)"

In *Mann* v. *Mueller*, *supra*, judgment for broker's commission was affirmed even though the parties had failed to perform their agreement to exchange real and personal properties. At page 485, this court said: ". . . considering the contract as a whole, it is obvious that appellants and respondent had determined the rate and amount of the rentals. There is also in the record evidence that appellants had previously inspected the grocery store, that the trailers were on the ground and their respective sizes and locations also had been observed by appellants." And, at page 487: ". . . appellants have failed to state either in the trial court or upon appeal what essential provisions, if any, had been omitted from the agreement signed by them."

*Gavina* v. *Smith*, 25 Cal.2d 501 [154 P.2d 681], also relied upon by appellants, contains similar language. At page 504 of that decision the court further stated: "Plaintiffs' contention that only a contract to make a lease was created by the exercise of the option is based upon the understanding that the form of lease attached to the option agreement was to be completed and signed by the parties after the exercise of the option. Where the parties, however, have agreed in writing upon the essential terms of the lease, there is a binding lease, even though a formal instrument is to be prepared and signed later."

Appellants also cite *Meyer* v. *Selggio*, 80 Cal.App.2d 161 [181 P.2d 690], and state in their brief that "It seems to appellant that the facts in this case are almost identical to the case now before the bar in that, when the defendant executed the contract of November 15th, 1954, he accepted

the doctors as *prospective lessees* and therefore he cannot question the fact that they were ready, able and willing to enter into a lease." (Emphasis added.) In that case, however, the defendant ". . . admitted in his answer that he had executed the contract of sale in favor of the vendee obtained by plaintiff," that the contract was "on the terms specified by defendant," and that "plaintiff obtained purchasers, ready, willing and able to buy the property." In that decision, at page 164, it is said that the broker's commission is earned "when the vendee and vendor have executed a binding, written agreement between them upon the terms provided in the contract of employment of the broker . . ."

From what we have said herein, it is apparent that the Mann, Gavina and Meyer cases, *supra*, concerned definite contracts between lessor and lessee or vendor and vendee.

In the instant action, the prospective lessees agreed by the writing of November 15, 1954, to lease a building and specified that plans were to be subject to their approval. At the time of the agreement, not even preliminary sketches of the proposed building had been made. In December they discussed their needs with defendant's architect. January 7th, the architect showed them preliminary sketches, their needs were further discussed, and the architect told them it would be eight to ten weeks before working drawings could be available. On January 26th the prospective lessees withdrew their "offer to lease."

An agreement denominated a lease of real property, which was "definite and certain as to terms, description of premises, quiet enjoyment, remedies upon default, rental, and all other usual and necessary parts of a lease," but which provided that plaintiff would erect the building upon plans and specifications to be approved by lessee, has been held to be a preliminary agreement lacking an essential provision, and not binding upon the prospective lessee in an action for specific performance or one for damages for breach. (*Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Sales Corp.*, 61 Cal. App.2d 55 [141 P.2d 938].)

In *Bravo* v. *Sharkey*, 97 Cal.App.2d 883, 886 [218 P.2d 785], the agreement before the court provided that plaintiffs were to remodel the premises according to plans and specifications to be prepared by plaintiffs and submitted to and agreed upon by defendants. It was there said that there could be no enforceable agreement unless and until plans and specifications had been prepared and written approval endorsed thereon.

In the instant action, appellants have failed to procure a lease or any enforceable contract to lease in the future. They urge that, nevertheless, ''the brokers have complied with their agreement, to-wit: to find lessees who were acceptable to the owner.''

While *Ridgway* v. *Chase*, 122 Cal.App.2d 840 [265 P.2d 603], is not cited by either party to the instant appeal, the facts upon which it is predicated are quite similar to those now being considered. It was an action by a real estate broker to recover commissions under his agreement ''to procure a tenant'' for a food market on a certain 20 acre parcel, on a ''percentage lease with minimum rental to be approved by owners.'' Prospective lessees and defendant owner had ''entered into a written contract by which they agreed to execute a lease . . . on specified terms and conditions,'' including a provision that the market was later to be built according to plans and specifications ''to be approved in writing by both parties.'' No plans were approved and no lease executed. The trial court found that the broker ''had fully performed his contract'' and that the ''proposed lessees . . . have been ready, willing and able to execute the lease''; and concluded that the owner had accepted the ''proposed lessee'' by entering into the writing referred to; and gave judgment for plaintiff broker. The judgment was reversed on appeal.

In the Ridgway decision, *supra,* at page 848, Mr. Justice Vallée, speaking for the court said: ''The acceptance of the owner's offer to lease must be unconditional to entitle the broker to a commission. (*Edwards* v. *Billow,* 31 Cal.2d 350, 358-361 [188 P.2d 748]; *Love* v. *Gulyas,* 87 Cal.App.2d 608, 615 [197 P.2d 405].)'' And, at pages 850-851: ''The cases which hold that where a broker produces a person who is ready, willing and able to consummate a lease he has earned his commission are not in point. . . . Defendant did not unconditionally accept the proposed lessee. There was no unqualified, legally binding agreement to lease.'' And again, at page 852: ''We hold that the finding to the effect that the contract of employment as broker was fulfilled is not supported by the evidence.''

The writing of November 15, 1954, now engaging our attention, left for future agreement practically all essential elements of the anticipated lease, and therefore it was not an unqualified acceptance of defendant's offer to lease, or an unconditional acceptance by defendant of the proposed lessees. Plaintiffs introduced to defendant *prospective lessees* who of-

fered to lease a building to be erected by defendant according to plans subject to their approval and later withdrew their offer before plans were submitted. Plaintiffs did not perform their undertaking to *procure a satisfactory lessee,* or any lessee. The commission sought by plaintiffs was not earned by them.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 11, 1957.