NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1290

PATRICK J. SEARS, personal representative,[1]

vs.

SNR REALTY LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, SNR Realty LLC (SNR), appeals from a final, amended judgment entered in favor of Paul J. Sears on all claims and counterclaims.  We affirm.

Background.  Sears executed his right to foreclose under a mortgage to Steven Graziano to secure a loan on a condominium unit located at 1079 Dickinson Street, Springfield (premises). At the public foreclosure sale on March 29, 2018, SNR submitted the highest bid of $147,000, inclusive of the five percent buyer's premium.  The memorandum of sale (contract) signed by

---

[1] Of the estate of Paul J. Sears.  Sears passed away during the pendency of this appeal; his personal representative was substituted as the plaintiff by order of this court.

Sears and attorney Sanjiv Reejhsinghani, the manager and owner of SNR, required the parties to close by April 30, but allowed Sears, in his "absolute and sole discretion," to extend the closing date in certain circumstances for a limited period. As required by the contract, SNR paid a total deposit of $14,700 to Sears. In the contract, Reejhsinghani indicated he understood that SNR would "forfeit" the deposit "should [he] fail to comply with said terms and conditions of sale set forth therein."

On April 26, SNR notified Sears of potential title issues.[2] The parties continued to communicate past the closing date as Sears's attorney attempted to resolve Reejhsinghani's concerns. On May 1, Sears's attorney provided Reejhsinghani with the results of his investigation. First, he indicated that notice of the foreclosure had been given to all entitled to it.[3] Second, he informed Reejhsinghani that it was the purchaser's

---

[2] Graziano had died before the foreclosure sale. Approximately one month before his death, Graziano had conveyed the premises to himself and to his wife as tenants by the entirety. In Reejhsinghani's view, an inchoate lien on the premises had arisen on Graziano's death that would last ten years, and the premises were thus subject to a future estate tax. Reejhsinghani also claimed that Sears had failed to give notice of the foreclosure sale to the estate tax division of the Massachusetts Department of Revenue (DOR).

[3] Sears's attorney explained that as for the notice issue raised by Reejhsinghani, he had confirmed with an employee of a title insurance company that notice to the DOR was unnecessary where, as here, title had vested in the surviving tenant by the entirety before the initiation of foreclosure.

duty to resolve the estate tax lien issue.[4]  Finally, he stated Sears was prepared to convey marketable title as required by the contract, and that Sears "expects to close" and requested a date.  On May 9, Reejhsinghani sent an e-mail message that rejected that analysis, insisted that there was a notice issue and that the title was not marketable, and requested, among other things, that Sears remedy the estate tax lien issue before he would agree to close.

Following additional failed attempts to resolve Reejhsinghani's concerns, Sears's attorney stated that while he disagreed with Reejhsinghani's analysis, to "resolve the dispute and avoid litigation," he would drop the purchase price to $135,000 (plus the buyer's premium) -- as long as the parties closed by May 30.  On May 30, Reejhsinghani rejected the price reduction and notified Sears's attorney that since Sears could no longer convey good title, "the sales agreement is void, and [he] would require the full return of [his] deposit" that day.

In the meantime, while the parties continued to negotiate, Sears's attorney resolved a tax taking with the city of

---

[4] Sears's attorney suggested several ways Reejhsinghani could resolve the purported estate tax lien concern, and he pointed out that pursuant to the terms of the contract, the purchaser takes title subject to, inter alia, all liens. Attempting to assuage Reejhsinghani's concerns, Sears's attorney also informed him that the estate's lawyers had indicated that Graziano's estate would not be taxable.

Springfield.[5]  On July 3, Sears's attorney informed Reejhsinghani that the tax title issue had been resolved and Sears was "ready, willing and able to convey"; he also asked Reejhsinghani whether he was "prepared to close on the last terms discussed." Reejhsingani was not.

In addition, even though Reejhsinghani had agreed to purchase the premises subject to all "outstanding" tax titles and municipal encumbrances of record, he took the position that since these no longer existed, he was not responsible for them. On July 9, Sears's attorney sent an e-mail message notifying Reejhsinghani that due to his failure to remedy SNR's "continued default" under the contract, Sears "shall convey [the premises] to the second highest bidder and retain the deposit."[6] Reejhsinghani continued to try to wrangle a further reduction in price.  On July 13, Sears responded, holding firm on a price of $135,000 "plus Buyers premium plus back taxes."  He said if this was not agreeable, he would release the deposit "upon execution of a release and termination agreement."  That same day, Reejhsinghani sent an e-mail message accepting the $135,000

---

[5] The city had obtained title to the premises on May 14 through a tax taking.  On June 20, Sears's attorney recorded a "vacation of [the city's tax taking] judgment."

[6] The mortgagee's notice of sale permitted the mortgagee to sell to the second highest bidder if the highest bidder defaulted.  Sears submitted the second highest bid of $130,000.

4

reduced price, but refusing to pay the back taxes.[7] Reejhsinghani took this position even though he admits that Sears's attorney had announced there was an outstanding tax lien and unpaid condominium fees owed on the premises at the public auction and the contract provided that the sale was subject to back taxes.  On July 23, Sears's attorney sent an e-mail message to Reejhsinghani requesting that he either pick up the deposit or send directions as to where it should be sent.

At this juncture, Sears, the second highest bidder, decided to go forward with the purchase himself.  However, Sears's attorney made a mistake.  Instead of conveying the property to his client, Sears's attorney recorded a foreclosure deed on July 25, 2018, naming SNR as the grantee.  Upon realizing the error, Sears's attorney called Reejhsinghani the same day, but Reejhsinghani could not talk.  Sears's attorney also sent an e-mail message.  When Reejhsinghani did not respond or sign a release deed the same day, Sears filed this action to quiet title and for damages and other relief deemed just and proper.[8]

---

[7] To the extent that Sears waived the sixty-day extension period, Reejhsinghani's refusal to reimburse Sears for the back taxes he had promised to pay constituted a breach of the contract.

[8] In his e-mail message dated July 25, 2018, Sears's attorney also offered to return SNR's deposit, noting that Reejhsinghani had failed to respond to his previous offer to return it.

Discussion.[9]  The amended judgment challenged by SNR adjudicated and declared that the foreclosure deed inadvertently recorded by Sears's attorney on July 25, 2018, was void; quieted Sears's title to the premises against SNR; declared that Sears was the owner in fee simple of the premises; and declared that SNR had forfeited its deposit as a result of its breach of the contract.  We discern no error.

To start, Sears was entitled as a matter of law to cancellation of the deed recorded by the mistake of his attorney.  SNR admitted in its answer, and acknowledges on appeal, that no delivery of the deed occurred, an essential element of a conveyance.  See Hawkes v. Pike, 105 Mass. 560, 562 (1870) ("A deed of real estate, in order to take effect as a conveyance of title, must be delivered by the grantor, and actually or by implication accepted as his own by the grantee").  Moreover, SNR would be unable to show on this record that Sears intended to deliver a valid deed to SNR conveying the premises.  See Frankowich v. Szczuka, 321 Mass. 75, 77 (1947) (absent intent by grantor that effects present transfer of property, no delivery occurs).  Cf. Landry v. Landry, 265 Mass. 265, 266-267

---

[9] "We review a judge's grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law'" (citation omitted).  Geezil v. White Cliffs Condominium Four Ass'n, 105 Mass. App. Ct. 103, 106 (2024).

6

(1928) (affirming decree canceling deed as cloud on title where grantor did not intend title to pass or that grantee have any present interest in deed; deed recorded by grantee's agent without authorization vested no rights in grantee).

Next, as a matter of law, SNR was not entitled to the remedy of specific performance against Sears. The contract permitted Sears in his sole discretion to extend the time for performance for up to sixty days. Fairly read, the contract did not require Sears to extend performance for the full sixty days as SNR claims, and in this case, the extension was shorter. On May 1, 2018, Sears's attorney informed Reejhsinghani that there was no notice issue, and that Reejhsinghani, as purchaser, had the obligation to resolve the estate tax issues himself; he expressly asked for SNR's performance at that time. This e-mail message was clear notice to Reejhsinghani that Sears's extension of the closing, "in [his] absolute and sole discretion," in order "to make reasonable efforts to cure" any title defects had concluded. SNR, however, refused to close until Sears resolved the claimed clouds in the title. That was not a tenable position under the contract and amounted to a default in the terms and conditions of sale.[10] Not only did Sears have no duty

_____

[10] SNR was not without options at this point. Pursuant to paragraph five of the contract, Reejhsinghani could have demanded his deposit back due to the potential notice and estate tax lien issues or he could have paid the purchase price without

under the contract to resolve the potential title issues as SNR claims, the estate tax cloud, if any, did not excuse SNR's performance.  Cf. King v. Allen, 9 Mass. App. Ct. 821, 822-823 (1980) (seller's probable inability to convey quality of title called for by terms of agreement for sale of land due to pending estate tax matters did not excuse seller's performance); Warner v. Wilkey, 2 Mass. App. Ct. 798, 798 (1974) (estate tax lien imposed on land by death of spouse "was not an encumbrance preventing [surviving joint tenant spouse's] conveying a good clear record and marketable title . . . since the lien would have been removed by the act of conveyance" [quotation and citation omitted]).  SNR's material breach of the contract on May 9 (and again on July 13 if Sears is deemed to have waived the sixty-day extension period) excused Sears from further performance.  See Astra USA, Inc. v. Bildman, 455 Mass. 116, 142 n.39 (2009).  And where SNR defaulted in its obligations under the contract, Sears was entitled to retain SNR's deposit.[11]

---

deductions for any defects in title in exchange for what title Sears had to convey.  He did neither, insisting that Sears remedy the title issues, and shortly thereafter demanding price reductions.

[11] It is true that Sears did not request forfeiture of SNR's deposit or monetary damages in his complaint.  In its opposition to Sears's motion for summary judgment, however, SNR requested a judgment regarding the deposit in connection with its breach of contract counterclaim, putting the issue before the judge.  We note that Reejhsinghani could have obtained SNR's deposit back on several occasions, but failed to do so, presumably to support

8

In addition, the contract declared "void" by Reejhsinghani on May 30, 2018, expired by its terms on June 30.  Negotiations between the parties after that date did not lead to an agreement on all material terms, and thus no binding contract for the sale of the premises arose.  See K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 344 (2023).

SNR objects to Sears being declared the owner in fee simple of the premises on the ground that Sears had not demonstrated he was the successful bidder at his own foreclosure sale or that "the actual sale was validated."  SNR has no title or interest in the premises, and thus has no standing to challenge any alleged noncompliance by Sears with the statutory foreclosure process.  See G. L. c. 244.

SNR's "anticipatory breach" and G. L. c. 240 arguments, which were raised for the first time on appeal, are not properly before us and are deemed waived.  See Gannett v. Board of Bar Overseers, 495 Mass. 1025, 1025 n.1 (2025).  Any claims raised for the first time in the reply brief come too late and are also waived.  See Travenol Lab., Inc. v. Zotal, Ltd., 394 Mass. 95, 97 (1985).

---

his misplaced argument that Sears's continued control over it after recording the July 25, 2018 foreclosure deed in SNR's name "constitutes a continued acceptance of the material terms of the contract and valuable consideration."

9

The amended judgment entered October 8, 2021, is affirmed. Sears's request for attorney's fees and costs incurred in connection with this appeal is allowed.  The plaintiff shall file a verified and itemized application for fees and costs within fourteen days of the date of this decision, and the defendant will have fourteen days thereafter in which to file any opposition to the amounts requested.  See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).  SNR's request for attorney's fees is denied.

So ordered.

By the Court (Henry,
Desmond & Englander, JJ.[12]),

Clerk

Entered:  July 2, 2025.

---

[12] The panelists are listed in order of seniority.