[Civ. No. 1584.    Third Appellate District.—May 17, 1918.]

ANTONIO MENDOZA et al., Respondents, v. CENTRAL FOREST COMPANY (a Corporation), et al., Appellants.

MECHANICS' LIENS—FARM DEVELOPMENT—STRUCTURE—CONSTRUCTION OF CODE.—Under section 1183 of the Code of Civil Procedure, providing for mechanics' liens on specified improvements "or other structure," farm development consisting of ditches, drains, embankments, and roads, so correlated as to form one harmonious entity designed to convey water to and distribute it over the land, and constituting a permanent improvement thereto, increasing its value, is a "structure."

APPEAL from a judgment of the Superior Court of Glenn County. Wm. M. Finch, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, and George R. Freeman, for Appellants.

Harmon Albery, and Duard F. Geis, for Respondents.

CHIPMAN, P. J.—Plaintiffs commenced the action to enforce certain service liens against the real property belonging to defendant Central Forest Company. These liens consist of two classes: 1. Labor performed; and 2. Liens for appliances, teams, and power furnished and supplied.

37 Cal. App.—19

The trial was by the court without a jury and plaintiffs had judgment, from which defendant Central Forest Company appeals.

Appellant states in its closing brief that "since the brief was prepared the laborers have been paid and the judgment has been satisfied so far as it affects the laborers." Appellant asks that the judgment be reversed as to plaintiffs J. A. Davis and Eldon E. Thwaites, whose claims fall under the second class above referred to.

Section 1183 of the Code of Civil Procedure is as follows: "Mechanics, materialmen, contractors, subcontractors, artisans, architects, machinists, builders, miners, teamsters and draymen, and all persons and laborers of every class performing labor upon, or bestowing skill or other necessary services, or furnishing materials to be used or consumed in or furnishing appliances, teams and power contributing to the construction, alteration, addition, to or repair, either in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, wagon road or other structure shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished and for the value of the use of such appliances, teams or power, whether at the instance of the owner, or of any other person acting by his authority or under him, as contractor or otherwise; and every contractor, subcontractor, architect, builder or other person having charge of the construction, alteration, addition to or repair either in whole or in part of any building, or other improvement as aforesaid shall be held to be the agent of the owner for the purposes of this chapter."

It is alleged in the complaint "that at all times herein mentioned, the defendant J. S. Westphal was the contractor, agent and representative of the defendant, Central Forest Company, a corporation, in the work and construction under the contract hereinafter mentioned, and represented defendant, Central Forest Company, in that behalf.

"That on the 15th day of May, 1914, said defendant J. S. Westphal, made and entered into a contract with the defendant, Central Forest Company, a corporation, to do the farm development, consisting of plowing, preparation of soil, leveling, checking, ditching, draining and building roads, under and pursuant to the terms and specifications of said contract,

in and upon the above described land, the property of the defendant, Central Forest Company, a corporation; that said contract was in writing and subscribed by the parties thereto, and the same was filed for record in the office of the county recorder of the county of Glenn, State of California, the same being the county in which said property is situate, a copy of which said contract is hereto annexed, marked Exhibit 'A,' and made a part of this complaint.

"That the said defendant, J. S. Westphal, contractor and agent of and for said defendant, Central Forest Company, a corporation, commenced the building and construction of said farm development under and pursuant to the terms and conditions of said contract, and under and pursuant to the specifications and plat thereof attached, on or about the 18th day of May, 1914, and continued said work until on or about the 1st day of September, 1914."

The specific purpose for the development of appellant's tract of land was so to prepare it that it could be seeded to alfalfa and could be readily and economically irrigated. It will be perceived from the provisions of the contract, some of which will presently be stated, that the work to be done constituted a permanent improvement to the land; installed thereby a permanent system for utilizing it for greater profit and greatly increasing its productive capacity, and added to its value certainly at least the contract price for the work, which was $24 per acre. The character of the work and the necessity for its being carefully planned and supervised by a competent engineer will be seen from the contract itself, under which the work was done, some of its provisions being as follows:

"The said contractor hereby promises and agrees to and with the said company that the contractor will, for the consideration hereinafter mentioned, do the farm development which shall consist of plowing, preparation of soil, leveling, checking and draining, and building roads; the work to be done according to plans shown on the accompanying blue print attached hereto and made a part of this contract; on the south half of the north half of section seventeen, township twenty north, range three west, M. D. B. & M., and agreed for the consideration mentioned to furnish all necessary labor, tools, machinery and equipment for such work; said work to begin within ten days after acceptance of and signing of this contract and to be completed before the 25 day of August,

1914. All of said work to be done under the direction of and completed to the satisfaction of John P. Ryan, the engineer of the Company.

"Consideration: The said Company hereby promises and agrees to and with the said contractor that when and as said work is completed the said Company will . . . well and truly pay or cause to be paid unto said contractor at the rate of $24.00 per acre of work done; such acreage not to include roads at the rate of $100.00 per mile for roads built hereunder. . . .

"Order of Work: The contractor shall commence his work at such points as the engineer in charge may direct, and shall conform to said engineer's orders and directions as to the order of time in which different parts of the work shall be done. . . .

"Change of Plans: The Company shall have the right to make such changes in alignment, dimensions or character of work to be done, as in the opinion of the engineer the interest of the work or company may require.

"Prosecution of Work: Should the contractor fail to begin work within the time required or fail to prosecute the work with not less than forty head of stock, or if at any time the contractor is not carrying out the provisions of this contract in its true intent and meaning, . . . the Company in such case shall have power to terminate the contract or withdraw any portion of the work under said contract; or the Company may employ other parties to carry the contract to completion, or hire such force and tools, appliances, materials and animals at the contractor's expense as may be necessary for the proper conduct of the work and for the completion thereof. . . .

"In the determination of the question of whether there has been such noncompliance with the terms of this contract as to warrant the termination thereof, the decision of said engineer shall be binding upon all parties.

"Payment of Men: The said parties hereto further agree as follows: That the said contractor shall pay punctually the men who shall be employed on the aforesaid work, and the persons who shall furnish the materials therefor, and before the said contractor shall be entitled to any of the progress or final payments, as herein provided, he shall first satisfy, or cause to be satisfied, all claims for labor expended or materials used, or stock hired, in the construction of said work that may in any

event become a lien upon said property, or may in any way become binding upon or chargeable to the said company, and shall furnish if demanded to the said company a satisfactory evidence that all claims are satisfied. . . .

"In estimating extra work, only the time of the men and teams actually employed, the foreman immediately in charge of the work and the material consumed, shall be considered chargeable to the work. . . .

## "SPECIFICATIONS.

"Stakes and Marks: All lateral and drain work performed under the terms of this contract shall be indicated by center stakes only, grades shall be given where necessary. The engineer shall give one set of inspection levels when asked for by the contractor. Border checks shall be located by the contractor in accordance with the plans attached.

"Excavation: All excavation shall be deposited in embankment or shall be evenly wasted over adjoining area as directed by said engineer.

"Construction of Embankments: Borrowing for embankments shall be made at such points as said engineer shall direct, the material for the construction of levees may be borrowed where the contractor deems best, keeping in mind that the land between checks shall be level transversely with a continuous slope longitudinally.

"Finish: Tops and slopes of embankments and bottom of cuts shall be finished in a workmanlike manner and be true to line and grade, and ordinary scraper finish being required. No high points shall be left in bottoms or laterals or drains or between border checks. A continuous downward slope shall be demanded on border checks."

The testimony of plaintiff Davis was that the contractor, Westphal, hired from him fifteen mules with their equipment of harness, stretchers, lines, and other appliances—a complete outfit ready to be used and which was used in the development work being done by Westphal under his contract with the defendant corporation. The mules rented to Westphal by plaintiff Thwaites were similarly equipped and so used by the contractor, "grading and scraping and all the development work."

In their reply brief respondents, we think, fairly described this work and its purpose as follows: "When the farm de-

velopment was finally complete its component parts constituted a unified structure, arranged, built, and constructed of earth, with ditches and laterals built from the source of water supply to convey the water to the farm development and with laterals to distribute the water over the land. At regular intervals on the farm development there were checks (small embankments of earth) thrown up parallel to each other for the purpose of holding the water on the parts or portions of the farm development desired; thus, the land between any two of these checks could be irrigated separately and independently of any other unit of the farm development. The land between the checks was required to be level transversely with a continuous slope longitudinally, so as to insure the successful operation of the irrigation system, and in order to comply with the contract. Thus, when the alfalfa in any one unit had been sufficiently irrigated, gates in the lower end of the unit were opened and the water was automatically taken from the unit and removed by gravity away from the farm development. This could be done without interfering with the irrigation of the other units of the system. The land lying between the checks, or small embankments, consisted of specially leveled and highly prepared and cultivated seed beds, and it was in these beds that the alfalfa seed was planted. It is thus readily apparent that the farm development was an entity, consisting of integral component parts, each part of which was necessary and vital to the successful operation of the whole.''

We are called upon to decide whether the phrase ''or other structure,'' as used in section 1183, *supra,* may safely be said to apply to a completed undertaking such as was contemplated by this contract.

The court made the following among other findings of fact: ''That the completed farm development erected upon the south half of the north half of section 17, township 20 north, range 3 west, Mount Diablo base and meridian, situate in Glenn County, California (the said lands being the lands of the Central Forest Company herein and heretofore mentioned), under or pursuant to the contract of May 15, 1915, heretofore found to have been made and entered into by and between defendant J. S. Westphal and defendant Central Forest Company, a corporation, constitutes and is a structure.''

The court also made the following finding as conclusion of law: "That the farm development erected upon the lands of the Central Forest Company, as aforesaid, constitutes and is a structure within the meaning of section 1183 of the Code of Civil Procedure of the State of California."

In *Williams* v. *Mountaineer Gold Min. Co.*, 102 Cal. 134, [34 Pac. 702, 36 Pac. 388], Mr. Justice Temple, speaking for the court, construed these terms as follows: "The use of the phrase 'other structure' in the above extract (from section 1183) shows that the word 'structure' comprehends all the properties specifically enumerated, and is broad enough to include any similar thing constructed, should the enumeration prove incomplete." The definition found in volume 27, Am. & Eng. Ency. of Law, second edition, page 191, is as follows: "In the broadest sense a structure is any production or piece of work artificially built up or composed of parts joined together in some definite manner; any construction."

What was said in *Caddy* v. *Rapid Transit Co.*, 195 N. Y. 415, [30 L. R. A. (N. S.) 30, 88 N. E. 747], we think quite true, namely: "In cases like this lexicographers' definitions are useful as guide-posts, but they do not take us to our destination. The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted."

In the present case, we think, the definition given by Judge Temple, *supra*, will lead us to our destination. The statute gives the lien to all persons "furnishing materials to be used or consumed in or furnishing appliances, teams and power contributing to the construction, . . . either in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, wagon road or other structure . . . for the value of such labor done and materials furnished and for the value of the use of such appliances, teams or power, whether at the instance of the owner, or of any other person acting by his authority," etc.

The farm development here contemplated was a finished piece of work composed of integral parts, some of which the statute expressly designates as structures, and when completed consisted of ditches, drains, embankments, roads, so correlated as to form one harmonious entity designed to accomplish a particular object and constituting a permanent and valuable improvement to the land and necessary to its highest

and most profitable uses.  When finished, it stood out as obvious and visible in its usefulness and its purpose as would a house, or barn, or any other of the structures enumerated in the statute.  Viewing the statute with that liberality with which we are not only authorized, but by the statute itself we are enjoined to regard it, we feel no hesitancy in holding with the learned trial court that the work to which plaintiffs contributed, as shown, constituted a structure.

Appellant's contention that the only section of the code applicable is section 1191 and that as plaintiffs have not brought themselves strictly within that section, they are without remedy by way of lien and must look alone to the contractor, we do not think maintainable.  If, as we think, they have shown that the improvement or farm development toward which they contributed teams for the power necessary to its accomplishment constituted a structure, they had a right to look to section 1183 for relief.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 15, 1918.