[Civ. No. 7744.   Third Dist.   June 5, 1950.]

E. BRAVO et al., Respondents, v. JAMES J. SHARKEY et al., Appellants.

Clifford A. Rohe and Harry J. Gross for Appellants.

Joseph C. Tope and Rutherford, Jacobs, Cavalero & Dietrich for Respondents.

PEEK, J.—This is an action by plaintiffs to quiet title to certain real property. In addition to the usual averments it was alleged that plaintiffs and defendants had previously entered into an agreement which ''contemplated'' the execution of a lease to the defendants of the property in question; that defendants by their acts abandoned and rescinded said agreement; that defendants have refused to deliver up said agreement for cancellation and that they threaten to place the same on record.

The defendants' answer denied generally the averments of plaintiffs' complaint but admitted the execution of the agreement which they alleged to be in full force and effect and under which they had acquired a valuable interest in said real property. By a separate cross-complaint defendants alleged that in reliance upon said agreement they had expended large sums of money and had fully performed their part of said agreement and that as a result of plaintiffs' failure to perform they had suffered substantial loss for which they prayed judgment.

At the outset of the trial, which was before the court sitting without a jury, it was stipulated that the property was owned in fee by plaintiffs and that if the court should find against defendants on their cross-complaint, a decree quieting plaintiffs' title should be entered.

Pursuant to said stipulation the cause proceeded to trial and at the conclusion thereof plaintiffs' motion for a nonsuit was granted. Defendants have now appealed from the judgment accordingly entered on the grounds that (1) the lease entered into between the parties was a present binding contract notwithstanding that further acts were contemplated, and (2) that the court erred in granting plaintiffs' motion for nonsuit since there was evidence of substantial compliance on their part.

An examination of the agreement in question shows that it contains certain preliminary recitals to the effect that plaintiffs are the owners of certain real property situated in the city of Stockton; that defendants, together with "personal business associates" are "desirous" of leasing said property for a stated rental providing plaintiffs "proceed as soon as is reasonably possible to remodel said premises according to plans and specifications to be forthwith prepared by First Parties (plaintiffs) and submitted to and agreed upon by First and Second Parties," and prepared for occupancy by defendants and their associates, either as individuals or as a corporation to be subsequently formed and that plaintiffs agreed to have plans and specifications immediately prepared embodying details of "remodeling and construction agreed upon" by the parties and to proceed with such work of "remodeling and leasing" the premises to the defendants and their associates.

After enumeration of the foregoing the agreement provided that plaintiffs were to employ an architect to prepare plans and specifications "which must be submitted to and agreed upon by Second Parties before the commencement of remodeling," and after approval thereof proceed to remodel the premises in accordance therewith. A copy of the approved plans and specifications was to be annexed to the agreement and made a part thereof. The agreement then makes a general statement of the manner and extent of the remodeling to be done and the allocation, as between the parties, of the costs thereof. It is then stated that the reason for such remodeling was to enable plaintiffs to "turn over and lease" to defendants, or a corporation to be thereafter formed, the building ready for use and occupancy. The agreement next provides that the "term of the lease which the parties agree to sign" shall be 10 years with an option of renewal by defendants exercised in writing "at least one (1) year before the expiration of the present lease, and the parties agree to execute said lease as soon as the same can be drawn up and presented for execution by Gumpert & Mazzera, attorneys for the parties hereto." The agreement provided further that the rental agreed to be paid in "said lease" by second parties shall be a specified per cent of gross sales and that "said lease" shall contain a minimum guaranteed rental. Also that "said lease" shall contain an absolute covenant against assignment except to the corporation to be formed by second parties. The agree-

ment in addition provided that "The lease to be signed shall, with regard to all pertinent subject matter and detail, be identical with the percentage lease prepared by Harry A. Mazzera for M. A. Sanguinetti and Charles Senderov, executed on January 18, 1946." Lastly, the agreement provides for a deposit of $5,000 by defendants, "with the understanding that in the event the parties, after reasonable effort, are unable to agree on plans and specifications, this Agreement and the lease agreed to be executed by the parties hereto shall ipso facto, . . . become null and void."

It is apparent from the foregoing summary of the agreement that it is not as defendants contend, a contract wherein the parties have agreed in writing upon the essential terms thereof and hence have created a binding lease even though some further act is contemplated by them. Therefore it does not come within the rule enunciated in the case of *Gavina* v. *Smith*, 25 Cal.2d 501 [154 P.2d 681] and like cases cited and relied upon by defendants. ■ Here, as in *Kerr Glass Mfg. Corp.* v. *Elizabeth Arden Sales Corp.*, 61 Cal.App.2d 55 [141 P.2d 938], it is clear on the face of the agreement that the parties did not intend to enter into a lease of the premises unless and until plans and specifications for remodeling of the existing building on the premises had been prepared and the written approval thereof endorsed thereon by plaintiffs and defendants. Additionally the agreement herein provided that in the event the parties were unable to agree upon such plans and specifications the agreement of itself would become null and void and the deposit returned.

In the Kerr Glass Corporation case the agreement there in question contained the following provision (page 56):

"Said building shall be constructed generally in accordance with the preliminary leasing plans and outline specifications therefor which are attached hereto, approved in writing by both the lessor and the lessee, and by reference made a part hereof the same as if set forth in full herein, and the final plans and specifications, hereinafter referred to. The final plans and specifications shall be prepared by the lessor within a reasonable period of time, and shall be approved in writing by both the lessor and the lessee before the commencement of the construction of said building, and upon said final plans and specifications being approved by the parties hereto as aforesaid, they shall become a part of this lease by reference the same as if set forth in full herein, and neither party to this lease shall unreasonably withhold its approval thereof."

The reviewing court in affirming the order of the trial court sustaining defendants' demurrer without leave to amend, stated: "It is apparent that approval of the final plans and specifications was an essential prerequisite to a binding contract between the parties. Upon its face additional terms were to be agreed upon before they were to be bound by it." Such is the precise situation presented in the present case. Therefore in light of the rule so stated the agreement now before this court can be said to be nothing more than an agreement to agree concerning a lease to be subsequently executed and as such it cannot be made the basis of an action either in law or in equity. (*Autry* v. *Republic Productions Inc.,* 30 Cal.2d 144 [180 P.2d 888]; see, also, Restatement, Contracts, vol. 1, § 26.)

Defendants' second contention is likewise without merit. When the Supreme Court in *Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226 [209 P.2d 1], said "A trial court is justified in granting a motion for non suit '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff,' " it meant that the evidence must be sufficient to raise something more than mere surmise or conjecture.

The record herein discloses initial discussion by the parties during the year 1946 and the preparation of preliminary plans for the remodeling of a two-story building then existing on the premises. No specifications were ever prepared in accordance with such preliminary plans or discussions. Thereafter the parties apparently changed their minds and in the following year began negotiations relative to an entirely different project—the erection of a new three-story building, and the preliminary plans for remodeling were discarded. Following this change, new and different plans were prepared and discussions were had concerning increased rentals for a lease on such a building. Finally, although plans and specifications for such a new structure were ultimately completed and fixturization plans by appellants were submitted in 1948, the negotiations were broken off when the parties failed to agree upon the rental to be charged and the failure of defendants to disclose their associates, following which the $5,000 deposit

was returned to appellants. Obviously such circumstances cannot support defendants' contention that the court erred in granting plaintiffs' motion for nonsuit, for the reason that the strict compliance with the terms of the agreement was waived. In the first place no issue of waiver was presented to the trial court upon defendants' cross-complaint. From the pleadings it would appear that appellants' case was presented upon the theory that the agreement herein summarized was a full and complete contract and that the terms thereof had been complied with by the parties hereto. The rule is too well established to warrant citation of authority that a theory not before the trial court cannot be raised for the first time on appeal.

By reason of our conclusion upon the points hereinbefore discussed, consideration of appellants' further contentions is unnecessary.

The judgment is affirmed.

Adams, P. J., and Sparks, J. pro tem., concurred.