[Civ. No. 5959.   Fourth Dist.   Feb. 9, 1959.]

AJAX MAGNOLIA ONE CORPORATION (a Corporation) et al., Respondents, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, Milford W. Dahl, Richard M. Barker, Bruce Renwick and Victor E. Koch for Appellant.

Mize, Larsh, Mize & Hubbard and Royal E. Hubbard for Respondents.

STONE, J. pro tem.*—During the year 1931 the defendant and appellant Southern California Edison Company, a corporation, obtained right of way easements over three parcels of real property in Orange County for the purpose of constructing and maintaining power lines over and across the land described therein. At that time the property consisted of three separately owned parcels all being used for agricultural purposes. During the intervening years the property was sold and subdivided into residential lots.

---

*Assigned by Chairman of Judicial Council.

The plaintiffs, who own lots in the subdivision, filed an action in declaratory relief contending that they had the right to construct fences, clothes lines, patios, fish ponds, swimming pools, swings, and gymnasiums, and to plant trees on the right of way. The defendant denied plaintiffs' right to erect or place any of the enumerated improvements on the right of way and contended that it had the right of full, complete, unobstructed and unrestricted use of the strip of land 90 feet in width covered by the easement.

The court found and by its judgment decreed as follows:

"That the plaintiffs as owners of the servient tenement may not place, construct or install any building or other structure upon the real property included within the description of the easement owned by the defendant, Southern California Edison Company, or in any way obstruct the necessary and convenient use of said easement and right of way by said defendant without the written consent of the said defendant."

The court also found,

"That the right to construct fences by the plaintiffs upon or over the real property included within the description of the easement owned by the defendant Southern California Edison Company is given by the terms of the easement with the right to the said defendant to install and use gates."

Plaintiffs did not appeal from the portion of the judgment prohibiting them from building any sort of structure other than a fence upon the easements but the defendant has appealed from that portion of the judgment which permits the construction of fences subject to the right to install and use gates.

Looking first at the two agreements granting the Edison Company a right of way, we find them identical insofar as the language pertinent to this case is concerned. The clauses which define the purposes of the easement and the rights of the grantee are as follows:

". . . the Grantor hereby gives and grants to the Grantee, its successors and assigns, the right, privilege and authority to construct, erect, alter, enlarge, improve, repair, remove, replace, operate and maintain electric transmission lines consisting of steel or wooden towers or steel or wooden poles, with necessary guys, foundations and anchors, together with overhead and/or underground electric transmission wires, ground cables, telephone and telegraph wires, with insulators and cross-arms placed on said towers or poles, and other necessary

or convenient appurtenances connected therewith, across, over, under and upon a strip of land, . . .

"1. That the Grantee, its successors and assigns, shall at all times have ingress to, and egress from, said land for the purpose of constructing, repairing, renewing, altering, changing, enlarging, removing, replacing, patrolling and operating said transmission lines. (Said right of entry may be by trucks, automobiles, or other vehicles, or by foot, as may suit the convenience of the Grantee.) . . .

"6. That the Grantor, his heirs or assigns, will not allow or permit any building or other structure to be erected or placed within the boundaries of said land and/or right-of-way strip, except such as shall be approved in writing by the Grantee, its successors or assigns, or allow or permit any accumulation of explosive or inflammable material within the lines of said land and/or right-of-way strip or so near thereto as to constitute, in the opinion of the Grantee, its successors or assigns, a menace or danger to said transmission lines . . .

"8. That the Grantor, his heirs or assigns, shall have the right to use the lands affected by this easement in any way not inconsistent herewith; but it is understood and agreed that it is the intention of the parties hereto to grant to the Grantee, its successors and assigns, the fullest rights necessary or convenient to enable them to use the same without interference for the purposes hereinbefore set out. This easement shall include any and all rights necessary or convenient over, under and upon said land which the Grantee shall desire to exercise in connection with the construction, maintenance and operation of said transmission lines, whether specifically mentioned herein or not . . ."

The clause concerning gates in fences which the trial court construed as modifying the foregoing grant reads:

"The *Grantee* shall have the right to install and use gates in any fence or fences which shall now or hereafter be constructed across any portion of said land and/or right-of-way strip. . . ."

The third easement with which this appeal is concerned was acquired by deed rather than by agreement but the question on appeal is essentially the same. The clauses of the deed expressing the nature of the easement and the rights of the grantee are as follows:

". . . those permanent and exclusive easements and rights of way to construct, reconstruct, maintain, operate, enlarge,

improve, remove, repair and renew an electric transmission line consisting of a line of steel towers, poles, and/or other structures, wires, cables, including ground wires, both overhead and underground, and communication circuits, with necessary and convenient foundations, guy wires and anchors, insulators and cross-arms placed on said structures, and other appurtenances connected therewith, convenient and necessary for the construction, maintenance, operation, regulation, control and grounding of electric transmission lines for the purpose of transmitting, distributing, regulating, using and controlling electric energy, together with the right and easement for roads, ingress, egress, and other convenient purposes needed or desired at any time by the grantee, and the right and easement to construct, reconstruct, maintain and operate the same, and the right to clear and keep clear said easements and the real property affected thereby, free from explosives, buildings, structures, trees, brush and inflammable materials, for the protection from fire and other hazards; in, under, on, over and across a strip of land. . . .''

Then follows the clause regarding fences and gates which provides:

''Grantee shall have the right to install and to use gates in any fences which are now or may be hereafter constructed on said lands of the Grantor, for the purpose of permitting convenient entry to said right of way strip. Any gates which are installed by Grantee on said lands shall be locked with Grantee's locks, and also, if the Grantor so desires, may be locked with the Grantor's locks, in such a manner that either can lock or unlock the gates. Any gates which are installed and locked by the Grantor and used by the Grantee shall be locked also by the Grantee's locks so that either can lock or unlock the gates.''

The legal question presented by this appeal is identical as to all three easements as the clauses to be construed are substantially the same in each instrument. The trial court recognized the restriction of the servient tenement as to the construction of any building or structure on the right of way but found that the owners of the servient tenement could construct fences across the right of way and that the owner of the dominant tenement had the right to install gates in any fence constructed. There appears to be no doubt that a fence is a structure. (*Mendoza* v. *Central Forest Co.*, 37 Cal.App. 289 [174 P. 359] ; *Western Electric Co., Inc.* v. *Colley*, 79 Cal.

App. 770, 774 [251 P. 331]; 36 C.J.S. 636, § 1.) Hence the sole question is whether the words "The Grantee shall have the right to install and use gates in any fence or fences which shall now or hereafter be constructed across any portion of said land and/or right-of-way strip" modify and qualify the provision forbidding the erection of any structure on the right of way without the consent of the grantee. The right to place a gate in a fence granted to one party is not tantamount to a grant of authority to the other party to build a fence. If the clause pertaining to gates in fences were to have the meaning contended for by respondents the wording would have to be in substance: "The grantors shall have the right to construct fences across any portion of the right of way, subject to the right of the grantee to install and use gates." The wording used in the documents falls short of such a reservation in the grantor.

If it be conceded for the purpose of argument that the clause in each instrument relating to fences and gates, when considered separate and apart from the rest of the document, does cause an ambiguity or a conflict, none the less, such a manner of interpretation would be contrary to the rules of construction of documents. The entire agreement must be construed as a whole and each clause considered in the light of all of the other clauses. Civil Code, section 1650, provides: "Particular clauses of a contract are subordinate to its general intent." This rule of law has been amplified and stated in general terms by many decisions, a typical expression being that of the court in *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, 115 [291 P. 184]:

"It is a primary rule of interpretation that contracts must be construed as a whole that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect. (13 C.J., 525.)" See also 12 Cal.Jur.2d p. 369; *Perry* v. *Gross*, 172 Cal. 468, 469 [156 P. 1031]; *Moore* v. *Wood*, 26 Cal.2d 621, 630 [160 P.2d 772].

The grants of easement which are set forth quite fully hereinbefore reflect that the grantee was granted, among

other rights, the right, privilege and authority to construct, erect, reconstruct, alter, enlarge, operate and maintain electric transmission lines consisting of steel or wooden towers overhead and underground. Paragraph 8 of the two agreements is particularly significant and bears repeating. It provides:

"8. That the Grantor, his heirs and assigns, shall have the right to use the lands affected by this easement in any way not inconsistent herewith; but it is understood and agreed that it is the intention of the parties hereto to grant to the Grantee, its successors and assigns, the fullest rights necessary or convenient to enable them to use the same without interference for the purposes hereinbefore set out. This easement shall include any and all rights necessary or convenient over, under and upon said land which the Grantee shall desire to exercise in connection with the construction, maintenance and operation of said transmission lines, whether specifically mentioned herein or not."

It is clear that the parties to the original grants of easement contemplated a free and unhindered use of the right of way for the purpose of constructing, maintaining and servicing power lines. Considering the entire agreement it is evident that the parties did not intend that fences should be built across the easement at will without the consent of the owner of the dominant tenement.

The evidence disclosed that the right of way carries two 66,000 volt circuits, one known as the Barre-Trask Ocean View Circuit, and the other known as the Barre-Sullivan-Ellis Circuit. These circuits service approximately 100,000 residences. They also carry a responsible part of the service to various industrial users. In order to maintain the circuits and lines in good operating condition, they have to be patrolled approximately every 90 days. This patrol consists of two men in a truck, carrying tools and equipment to make necessary repairs. This patrol is conducted by riding along the lines to look at the structures to determine whether there is a frayed wire, hanging limbs, fallen structures, or any other obstructions. In addition, if a flashover occurs, that is a short in the circuit, the system is put out of service and it is necessary to patrol the line to determine the cause and repair it. Depending upon the degree of damage, in the event of a flashover, as many as three trucks and a holedigger need to get through and upon the easement and right of way for the purpose of repair. The trucks used in repair are four-wheel

drive line trucks, approximately 20 to 25 feet long, with a standard truck width. If a new pole were required, it would also involve a pole dolly, which is a two-wheel dolly, to which a pole is fastened, and the pole in turn fastened to the truck, forming a type of trailer. With the poles in question, it would be a trailer approximately 75 feet in length. In order to prevent a flashover between the structure and the wire, the insulators need to be cleaned. The cleaning process occurs at least once a year and under the present trend will occur more often. What is called an insulator washing machine is used to carry on the cleaning operation. This is a heavy piece of equipment, consisting of a boom, a water tank, and a high pressure pump with nozzle, all mounted on a truck, with a total weight of approximately 23 tons. This truck is driven down the right of way from pole to pole for cleaning purposes. If the right of way is not kept clear to allow the truck to be driven down the right of way, it is necessary that the cleaning process be performed by hand. In the hand-cleaning process the lines are taken out of service and deenergized, and a man climbs the pole and wipes the insulators with steel wool. This process requires one day to clean one circuit on six structures, compared to 20 structures a day on both circuits if the washing equipment is used. In the event it became necessary to restring the wire, each pole structure would have to be reached and the wire would have to be protected from obstructions on the ground to prevent damage.

Fences at the property lines of every building lot in the subdivisions even with gates, would materially interfere with the purposes of the easements and prevent the appellant, a public utility, from performing its duty of supplying electric energy to the public by means of the power lines along the easement. An interpretation of an instrument which would thwart the fulfillment of the purposes of an easement and impede its use will not be favored where a reasonable interpretation consonant with the purposes of the easement as expressed in the document is tenable.

The judgment is reversed.

Mussell, Acting P. J., and Shepard, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 8, 1959.