**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 396, *Petitioner-Appellee*, <br><br> v. <br><br> NASA SERVICES, INC., *Respondent-Appellant.* | No. 19-55166 <br><br> D.C. No. 2:18-cv-03681-SVW-E <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Submitted March 31, 2020[*]
Pasadena, California

Filed May 1, 2020

Before: Consuelo M. Callahan, Kenneth K. Lee,
and Lawrence J. VanDyke, Circuit Judges.

Opinion by Judge VanDyke

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Labor Law

The panel reversed the district court's order compelling arbitration of a labor dispute and remanded.

A waste management company and a union signed a Labor Peace Agreement containing an arbitration clause. The LPA's terms were conditioned upon the company entering into an exclusive franchise agreement with the City of Los Angeles by December 31, 2016. The franchise agreement was signed by the President of the Board of Public Works on January 31, 2017.

The panel held that under California contract law, the LPA clearly and unambiguously contained a condition precedent to formation, rather than a condition precedent to performance. If the condition precedent failed, then there was no contract. The panel remanded for the district court to determine in the first instance whether the city and the company entered an exclusive franchise agreement by December 31, 2016. The panel held that if that condition failed, then the district court could not compel arbitration.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

L. Brent Garrett and April L. Szabo, Atkinson Andelson Loya Ruud & Romo, Cerritos, California, for Respondent-Appellant.

Paul L. More and F. Benjamin Kowalczyk, McCracken Stemerman & Holsberry LLP, San Francisco, California, for Petitioner-Appellee.

**OPINION**

VANDYKE, Circuit Judge:

The City of Los Angeles created an exclusive franchise system for the collection and handling of municipal solid waste. L.A. Mun. Code § 66.33 (Apr. 8, 2014). To prevent the City's waste collection services from being disturbed by picketing, work stoppages, or other interruptions, the Franchise Ordinance requires each franchisee to be party to a labor peace agreement with a union that represents or seeks to represent its employees. NASA Services, Inc., a waste management company, wished to be selected as a franchisee for one or more of the City's eleven franchise zones.

NASA and Teamsters Local 396 signed a Labor Peace Agreement on October 27, 2014. The LPA contained a broad arbitration clause covering any disputes over its interpretation or application. But all the LPA's terms were "expressly conditioned" upon the City entering into an exclusive franchise agreement with NASA by December 31, 2016. NASA submitted the LPA to the City with its franchisee proposal. On January 31, 2017, the President of

the Board of Public Works signed NASA's franchise agreement.

The parties' underlying dispute amounts to this: NASA believes that, because its franchise agreement with the City was not signed until after December 31, 2016, the LPA's condition precedent failed and therefore no contract with Local 396 was formed; Local 396 believes the condition precedent did not fail, but even if it did, a contract was still formed. This case regards the proper mechanism to resolve the dispute. NASA contends the condition precedent related to the LPA's *formation*, and that, due to the condition's non-occurrence, no contract ever materialized between the parties. Local 396, on the other hand, argues the dispute should be submitted to an arbitrator, because even if the condition precedent failed, the condition precedent related to the parties' *performance* under the LPA, meaning a contract was duly formed and the arbitration clause is thus severable and binding under federal arbitration law.

Ruling on Local 396's motion to compel arbitration, the district court found certain phrases in the LPA's conditional provisions "inherently incompatible" and "impossible to reconcile" such that the agreement was ambiguous as to whether it contained a condition precedent to formation or to performance. Faced with this perceived irreconcilable ambiguity, the district court concluded the LPA contained a condition precedent to performance, because, the court reasoned, conditions precedent to formation are comparatively disfavored in the law. To aid in construing this ambiguous contract language, the district court considered extrinsic evidence that, it concluded, reaffirmed

its interpretation of the LPA.[1]  As a result, the district court concluded the arbitration clause was severable and directed the arbitrator to resolve the parties' dispute over whether the City and NASA entered a franchise agreement by December 31, 2016.  The district court also concluded the arbitrator should decide whether NASA waived its right to enforce the LPA's conditions, rejected NASA's statute of limitations defense, and awarded Local 396 attorney fees and costs.

## Jurisdiction & Standards of Review

NASA timely appealed, and we have jurisdiction under 28 U.S.C. § 1291 and 29 U.S.C. § 185(a).  We review de novo the district court's order compelling arbitration, *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997), the interpretation of a contract's language, *U.S. v. 1.377 Acres of Land*, 352 F.3d 1259, 1264 (9th Cir. 2003), and the principles of law applied to facts adduced from extrinsic evidence, *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 836 (9th Cir. 2001).  When a district court makes factual findings derived from extrinsic evidence used to interpret a contract, we review for clear error.  *DP Aviation*, 268 F.3d at 836.  Whether a contract is ambiguous is a matter of law we also review de novo.  *Cachil Dehe Band of Wintun Indians v. Cal.*, 618 F.3d 1066, 1075

---

[1] As explained below, the LPA was not ambiguous, so the district court should not have considered extrinsic evidence at all.  *See* CAL. CIV. CODE § 1639.  Even so, the district court's findings derived from that evidence were clearly erroneous.  Instead of construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party, *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, Inc., 925 F.2d 1136, 1141 (9th Cir. 1991), it did the opposite.  The extrinsic evidence, properly construed in NASA's favor as the non-moving party, clearly supports its position.

(9th Cir. 2010); *Benach v. Cty. of L.A.*, 149 Cal. App. 4th 836, 847 (2007).

## Discussion

## I

"Arbitration is strictly a matter of consent, and thus is a way to resolve . . . *only those disputes* . . . the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (citations and quotation marks omitted). Because of this "axiomatic" principle, "a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). Thus, courts may compel arbitration only after determining that an agreement to arbitrate has been formed. *Granite Rock*, 561 U.S. at 299. Importantly, the federal policy favoring arbitration of labor disputes plays a role only after a court has been satisfied that an arbitration agreement was "validly formed." *Id.* at 303; *see also id.* at 301 (explaining that courts apply an arbitrability presumption "only where a *validly formed and enforceable* arbitration agreement is ambiguous about whether it covers the dispute at hand") (emphasis added). In sum, the federal policy favoring arbitration is no substitute for party agreement, or lack thereof.

Accordingly, we "must determine whether a contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator." *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1340 (9th Cir. 1990). To determine whether the parties formed an agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *First*

*Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[2] Under California law, Local 396, the moving party, must prove by a preponderance of the evidence that an agreement to arbitrate exists. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Fundamental precepts of contract interpretation under California law (and not unique to California) guide our disposition of this case. The courts' superseding objective when interpreting a contract is to "give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." *Id.* § 1639; *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). Next, and most importantly, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. California case law consistently reaffirms the primacy of this principle:

> It is a primary rule of interpretation that contracts must be construed as a whole[,] that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be

---

[2] Both parties take the position that there is no inconsistency between the California rules of contract interpretation and federal common law under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We agree.

considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect.

*Ajax Magnolia One Corp. v. S. Cal. Edison Co.*, 167 Cal. App. 2d 743, 748 (1959); *Moore v. Wood*, 26 Cal. 2d 621, 630 (1945) (same).

Local 396 correctly notes that ambiguous contract provisions should be construed against the drafter. *See Penthouse Int'l, Ltd. v. Barnes*, 792 F.2d 943, 948 (9th Cir. 1986); *Jacobs v. Freeman*, 104 Cal. App. 3d 177, 189 (1980). But that rule of construction applies only where contract language is ambiguous and unresolved by the more fundamental principles of interpretation. Cal. Civ. Code § 1654. Foremost among those preceding principles, for our purposes, is the mandate that contracts be construed as a whole. *Id*. § 1641.

"[P]arties may make the creation of a contract subject to a condition precedent." *Taylor Bus Serv., Inc. v. San Diego Bd. of Educ.*, 195 Cal. App. 3d 1331, 1345 (1987). "[A] condition precedent is either . . . an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993). "The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract." *Realmuto v. Gagnard*, 110 Cal. App. 4th 193, 199 (2003).

There are two species of conditions precedent: conditions precedent to *formation* and conditions precedent to *performance*. *Jacobs*, 104 Cal. App. 3d at 189–90. Essentially, "[w]here a condition precedent to formation is not satisfied, the proposed bargain between the parties does not become a binding contract." *Kum Tat Ltd. v. Linden Ox*

*Pasture, LLC*, No. 14-cv-02857, 2014 WL 6882421, at *7 (N.D. Cal. Dec. 5, 2014) (citing *Taylor Bus Serv.*, 195 Cal. App. at 1345).    Indeed, "[e]ven where the contract is complete and signed, it may be shown that the parties orally agreed that it should not become binding until the happening of some event." *Clyde Bldg. Ass'n, Inc. v. Walsh*, 248 Cal. App. 2d 513, 515 (1967); *Bravo v. Sharkey*, 97 Cal. App. 2d 883, 887 (1950) (holding the same, where the parties agreed to the condition precedent to formation in writing). Conversely, if a condition precedent to *performance* fails, the parties still have a contract, but they lose the right to enforce at least some of its terms. *Kadner v. Shields*, 20 Cal. App. 3d 251, 258 (1971).    Courts will neither infer nor construe a condition precedent "absen[t] . . . language plainly requiring such construction." *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969); *Frankel v. Bd. of Dental Exam'rs*, 46 Cal. App. 4th 534, 550 (1996) ("[C]ourts shall not construe a [contract's terms] so as to establish a condition precedent absent plain and unambiguous contract language to that effect.").[3]  Conditions precedent must be expressed in plain, clear, and unambiguous language, but parties need not

---

[3] The district court relied upon *Antonelle v. Kennedy & Shaw Lumber Co.*, 140 Cal. 309, 315 (1903), for the proposition that where ambiguity in a contract's terms make it unclear what type of condition precedent the parties intended to create, the condition should be strictly construed against the party seeking to avail itself of a condition precedent to formation.    But in *Antonelle*, strict enforcement of the condition precedent would have worked a significant forfeiture (a factor we may consider when construing ambiguous contract language), and the party urging its enforcement apparently caused the condition precedent to fail. 140 Cal. at 316.    So *Antonelle* is different than this case, where Local 396 would suffer no cognizable forfeiture should the LPA have never materialized.  *Antonelle* would be inapplicable even if the LPA's terms were ambiguous.

invoke any "required magical incantation." *Roth v. Garcia Marquez*, 942 F.2d 617, 626 (9th Cir. 1991).

Though the law generally disfavors conditions precedent, courts must still "consider all of the terms" of an agreement to determine what the parties intended and give effect to that intent. *In re Marriage of Hasso*, 229 Cal. App. 3d 1174, 1180–81 (1991) (finding no condition precedent where "the agreement" lacked "language that it is 'subject to' or 'conditioned on'" some event). Party intent remains paramount.

"A [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *MacKinnon*, 31 Cal. 4th at 648 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)) (applying the California rules of contract interpretation to construe an insurance policy).[4] Moreover, "courts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18–19. Nor is "[t]he language of a contract . . . made ambiguous simply because the parties urge different interpretations."

---

[4] Because in our analysis below we discuss a New York case cited favorably by WILLISTON ON CONTRACTS (4th ed.), we note that the contract interpretation rules we apply in this case do not differ from New York's rules. *See Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (applying New York law: "ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the *entire integrated agreement*") (emphasis added).

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

## II

The district court correctly observed that the threshold question is whether the LPA contains a condition precedent to formation.  To answer this question, we must examine the LPA's language.  *Realmuto*, 110 Cal. App. 4th at 199.

### A.  Paragraph 1

Paragraph 1 of the LPA states that the "terms of this Agreement shall only become operative if all of the conditions set forth in paragraph 15 are satisfied."  This language clearly and unambiguously makes Paragraph 15's stipulations a condition precedent to formation.  As the district court recognized, "[t]his language is clear and unambiguous in its intent[:] if the conditions in Paragraph 15 are not met, then purportedly the LPA never 'becomes' operative in the first instance."  The legal definition of "operative" is "[b]eing in or having force or effect." *Operative*, Black's Law Dictionary (10th ed. 2014).  Thus, the plain reading of Paragraph 1 is that no "terms of this Agreement" shall "become" an instrument "having force or effect" unless all of Paragraph 15's conditions are satisfied. Unless the prescribed stipulations occur, there is no LPA "having force or effect."  *See*, *e.g.*, *Paratore v. Scharetg*, 53 Cal. App. 2d 710, 712 (1942) (using "operative" and "effective" interchangeably to describe the contingent nature of a contract containing an express condition precedent to formation).  Given that the "Agreement" itself—and not merely any particular obligations to perform under it—"shall only become operative" if Paragraph 15's conditions are satisfied, it would be strange to conclude that the parties intended anything by this language other than a condition

precedent to formation.  Paragraph 1 is clear: the LPA contains a condition precedent to formation, not performance.

### B.  Paragraph 15

Paragraph 15, in its entirety, contains the following language:

> All of the paragraphs of this Agreement are expressly conditioned on the City of Los Angeles entering into an exclusive franchise agreement or franchise agreements with the Employer for the collection of solid waste pursuant to City of Los Angeles Municipal Code, Article 6, Chapter VI, § 66.33.1 *et seq.* If the City enters into an exclusive franchise agreement for the collection of solid waste with the Employer, then the terms of this Agreement shall remain in effect for three (3) years following the effective date of the exclusive franchise agreement between the City and the Employer.  If the City fails to enter into an exclusive franchise agreement for the collection of solid waste with the Employer by December 31, 2016, then this Agreement shall become null and void.

Read together, the district court correctly concluded that Paragraph 15's three sentences clearly and unambiguously form one condition precedent: that the LPA shall only be operative if the City enters an exclusive franchise agreement with NASA by December 31, 2016.  But the district court read the second and third sentences in Paragraph 15 as conflicting with Paragraph 1, and therefore concluded the

language, taken together, was ambiguous as to whether it was a condition precedent to formation or performance.

### 1.   The district court's analysis of Paragraph 15

To be clear, reading Paragraph 1 alone, the district court would have concluded that the parties' condition precedent unambiguously applied to formation, not performance.  But the court concluded that Paragraph 15's language "contradicts" the "clear and unambiguous" language of Paragraph 1, therefore creating ambiguity.  The district court reasoned that the phrase "*become* null and void" in the third sentence of Paragraph 15 could only mean that the LPA was operative *before* the satisfaction of the condition precedent: "[a]n agreement cannot 'become' null and void if it was never operative or in effect in the first place."  The court thus concluded Paragraph 15's "become null and void" language was "impossible to reconcile" and "inherently incompatible" with Paragraph 1's "become operative" language.

The district court then identified support for this position in Paragraph 15's first two sentences by plucking phrases from the context of the entire, integrated agreement.  The district court concluded that the first sentence ("All of the paragraphs of this Agreement are expressly conditioned on" the City and NASA entering a franchise agreement) "does not clearly and unambiguously state that the express condition pertains to the formation of the agreement as a whole."  And the district court read the paragraph's second sentence (the LPA "shall remain in effect for three (3) years" as of the effective date of the City-NASA franchise agreement) as a party acknowledgment that the LPA was effective prior to the commencement of the three-year term.

## 2. The LPA clearly and unambiguously contains a condition precedent to formation.

The district court reached its conclusions by isolating Paragraph 15's conditional clauses from the rest of the LPA, in violation of the fundamental canon requiring courts to construe contract terms in harmony, where possible. *See* Cal. Civ. Code § 1641. It read the contract's terms in the abstract, construed them against NASA, and created the conflict it deemed irreconcilable. The district court did not consider particular words within "the context of the *entire integrated agreement*." *Bayerische Landesbank*, 692 F.3d at 53 (emphasis added). Nor did it use the whole agreement to help interpret the words and phrases it found ambiguous. Cal. Civ. Code § 1641. Rather, the court arrived at a superficial understanding of the words it deemed troubling, construed them against NASA, and made no attempt to harmonize all the LPA's provisions. The district court therefore violated the "primary rule of interpret[ing]" contracts under California law: to give effect to the parties' mutual intent gathered from the *entire* document. *Ajax*, 167 Cal. App. 2d at 748; Cal. Civ. Code § 1641. Essentially, it applied interpretive canons out of order. *See* Cal. Civ. Code § 1654 ("In cases of uncertainty *not removed by the preceding rules*, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.") (emphasis added). Had the district court applied them in order, it would have encountered no ambiguity at all.

Armed with the proper contract interpretation canons properly ordered, we analyze Paragraph 15 afresh. First, as stated above, and as recognized by the district court, Paragraph 1 clearly indicates that Paragraph 15 contains a condition precedent to formation. Next, we turn to

Paragraph 15 to analyze its conditions, understanding that we must read the instrument "as a whole." *Waller*, 11 Cal. 4th at 18 ("language in a contract . . . cannot be found to be ambiguous in the abstract").  Read in light of Paragraph 1, we presume Paragraph 15's terms combine to form one condition precedent to formation.  Cal. Civ. Code § 1641. That presumption yields only if we find plainly contrary language or ambiguity unresolvable by the fundamental rules of contract interpretation.

### i.    Paragraph 15, Sentence 1

Paragraph 15's first sentence restates the conditional language from Paragraph 1 even more forcefully: "All of the paragraphs of this Agreement are expressly conditioned on" the City entering a franchise agreement with NASA under the City's new ordinance.  The district court concluded (without explanation) that this sentence stopped short of expressly self-identifying as a condition precedent to formation.  Not so.  "All paragraphs of this agreement" in Paragraph 15 mimics and accentuates "terms of this Agreement" used in Paragraph 1.  Moreover, this sentence says the entirety of the Agreement's content is "expressly conditioned" on the City awarding NASA a franchise.  It emphatically restates Paragraph 1's condition by even more clearly and unambiguously (and now, repetitively) stipulating the LPA's very existence on a timely franchise agreement.  This formation-contingent language "is too definite to be ignored.  It jumps out at you.  The words employed are too strong to permit of ambiguity." *Los Angeles Rams Football Club v. Cannon*, 185 F. Supp. 717, 722 (S.D. Cal. 1960).

### ii.  Paragraph 15, Sentence 2

Paragraph 15's second sentence provides that the LPA shall "remain in effect for three (3) years following the effective date" of the City-NASA franchise agreement.  The word "remain" naturally describes the length of the LPA's life *upon commencement*.  It need not, contrary to the district court's assertion, speak to the LPA's vitality before execution of the City-NASA franchise agreement.  Indeed, even assuming arguendo that the district court's interpretation is *plausible*, Paragraph 15's second sentence *cannot* carry that alternative meaning when read as a part of the whole contract.  Cal. Civ. Code § 1641.  Because the LPA elsewhere contains clear formation-contingent language, "remain" "must be considered in connection with the rest of the agreement," which resolves any potential ambiguity.  *Ajax*, 167 Cal. App. 2d at 748.  Moreover, the clause immediately preceding "shall remain" reaffirms this point: "If the City enters into an exclusive franchise agreement for the collection of solid waste with the Employer, *then*. . . ."   Thus, "remain," within its own sentence's context, means the LPA will continue in effect for three years *after* its operative date.

### iii.  Paragraph 15, Sentence 3

Paragraph 15's third sentence, which bore the brunt of the district court's attention, states as follows: "If the City fails to enter into an exclusive franchise agreement for the collection of solid waste with the Employer by December 31, 2016, then this Agreement shall become null and void." It makes sense to read "become" here the same way we read it in Paragraph 1 ("become operative").  But that does not put the two paragraphs in conflict.  Rather, reading them "as a whole," if the condition is satisfied, the potential agreement "become[s] operative"; if the condition fails, the

potential agreement "become[s] null and void"—that is, it no longer can become operative.  Contrary to the district court's conclusions, the parties' use of "become" here does not lead to the unavoidable conclusion that there existed an operative contract before the franchise agreement was awarded, nor does it create irreconcilable conflict with the LPA's other conditional sentences.

First, the district court's interpretive logic evidently originates from confusion over the nature of a signed instrument containing a condition precedent to formation.  In short, such a document is a pre-negotiated agreement that will become effective if some articulated event occurs.  It is a proposed contract, not a contract.  "Thus, when the parties to a proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed."  13 Williston on Contracts § 38:7 (4th ed.).  Here, if the City and NASA entered into a franchise agreement by December 31, 2016, the LPA would "become" binding and operative.

If the condition failed, the LPA's *potential* to become a binding, operative agreement became extinguished—"null and void."  The LPA was an agreement to agree—operative, binding, and enforceable according to its terms *if* the City and NASA timely entered a franchise agreement.  It was similar to an option contract, which has the potential to become a broader agreement, but also has the potential to become nullified by its expiration.  There is nothing anomalous in the law about such contractual forks in the road.  The district court's interpretation of "become null and void" overlooks this, effectively insisting that "become" in

Paragraph 15 can only be read as an exit ramp, not a fork in the road.[5]

Second, and relatedly, the district court could only interpret "become null and void" as it did by ignoring the LPA's other conditional language that clearly and unambiguously establishes the opposite proposition—that the LPA remained *in*operative *until* the satisfaction of the condition. *See* Cal. Civ. Code § 1650 ("Particular clauses of a contract are subordinate to its general intent."). As the district court observed, Paragraph 1 clearly and

---

[5] That NASA relied upon the signed LPA in its franchise proposal to the City is of no moment. First, we pass no judgment about whether the condition precedent was satisfied. If the district court on remand concludes it was, Local 396's equities argument dissolves entirely. Second, Local 396's equities argument fails to convince regardless. It is almost certainly true that NASA benefited from the signed LPA; parties don't usually sign a contract unless they perceive a resulting benefit. But that hardly means that Local 396, a professional contract negotiating entity, got hoodwinked at the bargaining table. Local 396 received a benefit too—a *contingent* benefit. It bargained for a labor peace agreement with NASA *if* the condition precedent was satisfied. Like every condition precedent in every contract, there was some risk that the condition precedent to this contract could fail—a risk that Local 396 voluntarily agreed to take. This is exactly how a clearly and unambiguously expressed condition precedent to formation works:

> Freedom of contract prevails in an arm's length transaction between sophisticated parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain. If they are dissatisfied with the consequences of their agreement, the time to say so was at the bargaining table.

13 WILLISTON ON CONTRACTS § 38:7 (4th ed.) (internal quotation marks omitted) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 421 (N.Y. 1995)).

unambiguously announces a condition precedent to formation which consists of all the conditions in Paragraph 15.  This makes Paragraph 15 subordinate to Paragraph 1.  The word "become" in Paragraph 15 should not be read in a way that upheaves the parties' clearly established intent in Paragraph 1 (and Paragraph 15, by reference in Paragraph 1), if it can be reasonably avoided.  California law thus compels the court to interpret "become" as NASA urges: "to undergo change or development."  The district court's dubious interpretation of "become" needlessly creates ambiguity where none exists.  Moreover, its reasoning means the LPA's two explicit references to the conditional efficacy of the entire "Agreement" apparently refer to something less than the entire agreement.

Williston cites *Oppenheimer*, a New York case, when illustrating a condition precedent to formation.  13 Williston on Contracts § 38:7 (4th ed.) (discussing *Oppenheimer*, 660 N.E.2d at 688–95).  In *Oppenheimer*, the underlying agreement stated that if the condition was not satisfied by a specific date, the agreement would be "deemed null and void and of no further force and effect."  660 N.E.2d at 416.  The *Oppenheimer* court concluded that the agreement contained a condition precedent to formation.  *Id*. at 421.  *Oppenheimer* is pertinent here because its conditional language is effectively identical to that at issue in this case, except here the parties agreed that, upon failure of a condition precedent, the contract would "*become* null and void," while in *Oppenheimer*, the parties agreed the contract would "*be deemed* null and void."  *Id*. at 416.  If Williston and *Oppenheimer* are right (as we believe they are), the marginal difference between "deemed" and "become" must bear the full weight of the argument that Paragraph 15 *can only* have "the opposite meaning" of Paragraph 1.  But the words "deemed" and "become" just aren't that different in this

context.  *Before* the point in time where the condition precedent is satisfied or fails (here, before the end of December 31, 2016), the parties' signed contract is capable of "becom[ing] operative."  *After* the point in time when the condition precedent can no longer be satisfied (here, January 1, 2017), the parties' signed contract is "null and void"—that is, no longer capable of "becom[ing] operative."  The key point is that the signed document has changed from one thing (capable of "becom[ing] operative") to another (incapable of "becom[ing] operative").  In this context, whether you speak of that change as the signed document "becom[ing] null and void" or being "deemed null and void" is a distinction without a difference.  If "shall be deemed null and void" evinced a condition precedent to formation "in the clearest language" in Williston and *Oppenheimer*, 660 N.E.2d at 421, so does "shall become null and void" in this case.

The district court's insistence that "become null and void" *must mean* a contract already existed runs into another conflict with Williston and *Oppenheimer*.  In *Oppenheimer*, the condition precedent stated, inter alia, "this letter agreement and the Sublease shall be deemed null and void and of no *further* force and effect."  660 N.E.2d at 416 (emphasis added).  The New York Court of Appeals held that the *Oppenheimer* condition was a condition precedent to formation, despite the fact that "further" could be read the same way the district court here reads "become null and void"; namely, to admit the existence of a binding agreement before the satisfaction of the condition precedent.  Yet the *Oppenheimer* court did not pin all its analysis on "no further force and effect" and conclude that a contract existed before the occurrence of the condition precedent.  *Id*.  Quite the opposite, the court determined the parties had agreed to a condition precedent to formation, stated in the "clearest language."  *Id*. at 421.  That Williston finds *Oppenheimer*

illustrative of a condition precedent to formation reinforces the observations above regarding the nature of potential contracts. An agreement containing a condition precedent to formation is potentially operative *until* the failure of the condition, at which point it "becomes" null and void—incapable of becoming operative.

Similarly, in *Bravo* the California Court of Appeals discussed an agreement containing the following condition precedent to formation: "[I]n the event the parties, after reasonable effort, are unable to agree on plans and specifications, this Agreement and the lease agreed to be executed by the parties hereto shall ipso facto, . . . *become null and void*." 97 Cal. App. 2d at 886 (emphasis added). The parties never agreed on plans and specifications, and the court concluded that the agreement was "nothing more than an agreement to agree concerning a lease to be subsequently executed and as such it cannot be made the basis of an action either in law or in equity." *Id*. at 887. Thus, like the present situation, "[e]ven when a written contract is complete and signed it may be shown that the parties agreed that it would not be binding until the happening of some future event, a condition precedent . . . ." *Haines v. Bechdolt*, 231 Cal. App. 2d 659, 661 (1965); *see also Clyde Bldg. Ass'n*, 248 Cal. App. 2d at 515 (same).

Local 396 argues *Oppenheimer* doesn't apply because the court there repeatedly referenced different conditional language ("unless and until") not extant in the LPA. The district court likewise criticized NASA's language choices. But parties need not deploy fine-tuned incantations to successfully create a condition precedent to formation. *See Roth*, 942 F.2d at 626. What matters is that the parties—both parties—were clear enough about their intent to create a condition precedent to formation. Here, as the district

court acknowledged, Paragraph 1's "language is clear and unambiguous in its intent to designate the conditions in Paragraph 15 as necessary conditions to the terms of the LPA 'becoming' operative."  And, as discussed, nothing in Paragraph 15's language must be read as undermining Paragraph 1's clear and unambiguous intent.  There is no "stark contrast" among the LPA's provisions.  To the contrary, its provisions, read as a whole, are quite clear.

## Conclusion

The district court's unnecessary reading of Paragraph 15 frustrated the intention of the parties clearly expressed in the LPA read as a whole.  Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ. Code § 1636.  The LPA contains a condition precedent to formation that is both ascertainable and lawful.  Consistent with the LPA's plain language and fundamental canons of contract interpretation, if the condition precedent failed, the potential LPA has become null and void.  This reading best honors "the intention of the parties . . . collected from the entire instrument."  *Ajax*, 167 Cal. App. 2d at 748.

We therefore reverse the district court's order compelling arbitration.  From October 17, 2014 to December 31, 2017, NASA and Local 396 were parties to a proposed agreement that would become operative, effective, and enforceable *if and only if* the condition precedent therein was satisfied.  If the condition precedent failed, there is no contract.  We reach no other issues and remand for the district court to determine in the first instance whether the City and NASA entered an exclusive franchise agreement by

December 31, 2016.  If that condition failed, the court may not compel arbitration.  *Granite Rock*, 561 U.S. at 299.

**REVERSED and REMANDED.**